# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**    **2. PLEASE TYPE OR PRINT**    **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>WOLAK **v**. TOWN OF OLD SAYBROOK, ET AL. | District Court or Agency:<br><br>CT | Judge:<br><br>AWT |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>08/28/2025 | District Court Docket No.:<br><br>3:23-cv-00734-AWT |
| | Date the Notice of Appeal was Filed:<br><br>09/18/2025 | Is this a Cross Appeal?<br><br>☐ Yes  ☑ No |

| Attorney(s) for Appellant(s):<br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:<br><br>Dennis M. Durao, Esq., Andrew J. Glass, Esq.; Karsten & Tallberg, LLC, 500 Enterprise Drive, Suite 4B, Rocky Hill, CT 06067; (860) 233-5600; (Fax): (860) 233-5800; ddurao@kt-lawfirm.com, a glass@kt-lawfirm.com |
|---|---|
| Attorney(s) for Appellee(s):<br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:<br><br>A. Paul Spinella, Esq.; Spinella & Associates; One Lewis Street, Hartford, CT 06103; (860) 728-4900; (Fax): (860) 728-4909; attorneys@spinella-law.com |

| Has Transcript Been Prepared?<br><br>N/A | Approx. Number of Transcript Pages:<br><br>N/A | Number of Exhibits Appended to Transcript:<br><br>N/A | Has this matter been before this Circuit previously?  ☐ Yes  ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:         Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

---

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

---

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

---

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party<br>☑ Federal question (U.S. not a party) | ☐ Diversity<br>☐ Other (specify): _____ |
| | ☐ Final Decision<br>☑ Interlocutory Decision Appealable As of Right | ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))<br>☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2016)

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**
- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [✓] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**
- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**
- [ ] Antitrust
- [■] Bankruptcy
- [ ] Banks/Banking
- [✓] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify):
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright / Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**
- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**
- [✓] Yes
- [ ] No

Will appeal raise a matter of first impression?
- [ ] Yes
- [✓] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:
   (A) Arises from substantially the same case or controversy as this appeal? [ ] Yes [✓] No
   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [✓] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant: JOSHUA ZARBO

| Date: 10/01/2025 | Signature of Counsel of Record: /s/ Dennis M. Durao ct29271 |
|---|---|

## NOTICE TO COUNSEL

Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| SCOTT WOLAK | : | CASE NO. 25-2279 |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| TOWN OF OLD SAYBROOK, ET AL., | : | OCTOBER 1, 2025 |
| Defendants. | | |

**ADDENDUM A TO FORM C**

**1.     Description of the Nature of the Action:**

This case arises from an interaction on November 18, 2022, between the plaintiff-appellee, Scott Wolak, the defendant-appellant, Joshua Zarbo, and defendants Town of Old Saybrook, and Patrolman James Simpson.  In this interlocutory appeal from the denial of qualified immunity as to Officer Zarbo related to the purported force used against plaintiff-appellee on that day, the factual statements below derive from undisputed facts, the plaintiff-appellee's version of disputed facts, and facts that can be clearly ascertained by reviewing record evidence.  While the defendant-appellant does not agree with the plaintiff-appellee's version of disputed facts, the defendant-appellant accepts them, as he is required to do, for purposes of this interlocutory appeal only.

This interlocutory appeal specifically concerns the plaintiff-appellee's claims that Officer Zarbo used excessive force against Mr. Wolak.  The defendant-appellant contends that the force used was objectively reasonable under the circumstances and, even if that were not the case, that he is entitled to qualified immunity on the excessive force claims because the undisputed facts and/or the plaintiff-

1

appellee's version of the facts show that the alleged force used by the defendant-appellant was objectively reasonable and/or did not violate clearly established law.

On November 18, 2022, Officer Zarbo located and approached the plaintiff-appellee's vehicle after receiving a report of an erratic driver on Plum Bank Road in Old Saybrook. Officer Zarbo saw the operator, later identified as the plaintiff-appellee, utilizing his cellular phone. Officer Zarbo knocked on the window to get the plaintiff-appellee's attention and identified himself as a police officer. Once the plaintiff-appellee rolled his window down, Officer Zarbo again identified himself then told the plaintiff-appellee to get out of his vehicle, intending to conduct a field sobriety test.

As the plaintiff stepped out of his vehicle, Officer Zarbo twice directed him to walk towards Officer Zarbo's patrol car. Instead of walking toward the officers and Officer Zarbo's patrol car, the plaintiff-appellee walked in the opposite direction, towards his home. Officer Zarbo followed the plaintiff-appellee as he walked toward his residence and ordered the plaintiff-appellee to stop; the plaintiff-appellee did not stop. Because the plaintiff-appellee did not stop, Officer Zarbo took hold of the plaintiff-appellee and the plaintiff-appellee exclaimed, "don't touch me", twice.

As the plaintiff-appellee turned around to Officer Simpson, who had just arrived on scene and ordered the plaintiff-appellee to place his "hands behind his back", Officer Zarbo took ahold of the plaintiff-appellee's left wrist, and Officer Simpson took ahold of plaintiff-appellee's right wrist. As the officers and plaintiff-appellee moved a few steps, Officer Zarbo applied a "controlled take down technique" and took the plaintiff-appellee to the ground.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Once the plaintiff-appellee was on the ground, Officers Zarbo and Simpson secured him in handcuffs. The plaintiff-appellee began complaining of leg pain and told the officers that his leg was broken. While the plaintiff-appellee was still on the ground, Officer Zarbo informed him that he was under arrest. The plaintiff-appellee then requested a doctor and, when Officer Zarbo asked the plaintiff-appellee if he wanted to go to the hospital, the plaintiff responded, "I might have to." Officer Zarbo contacted dispatch within seconds of the plaintiff-appellee indicating that he might need to go to the hospital and within two minutes of the plaintiff-appellee first complaining of leg pain or a broken leg, Officer Zarbo requested that the dispatcher send Emergency Medical Services to the scene to treat the plaintiff-appellee. Plaintiff-appellee was then transferred to Middlesex Shoreline Medical Clinic by ambulance where he was treated for his alleged injuries.

**2.** **The Results Below:**

The District Court granted in part and denied in part this defendant's Motion for Summary Judgment. This defendant now appeals the denial of the 3rd, 4th counts of plaintiff's complaint denying Officer Zarbo qualified immunity.

**3.** **Notice of Appeal and Docket Sheet:**

Copies of the Notice of Appeal and a current copy of the lower Court Docket Sheet are attached hereto.

**4.** **Opinion/Order Forming Basis of Appeal**

The District Court's Memorandum of Decision on the defendants' Motion for Summary Judgment, dated August 28, 2025 (attached hereto), granting in part and denying in part the defendants'

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

motion for summary judgment is attached hereto.  The Memorandum of Decision is also an exhibit to

the Notice of Appeal, which is attached hereto.

> DEFENDANT-APPELLANT,
> JOSHUA ZARBO
>
> BY/ss/ Dennis M. Durao
>     Dennis M. Durao
>     Federal Bar No.: ct29271
>     Andrew J. Glass
>     Federal Bar No.: ct30054
>     Karsten & Tallberg, LLC
>     500 Enterprise Drive, Ste. 4B
>     Rocky Hill, CT 06067
>     T: (860)233-5600
>     F: (860)233-5800
>     ddurao@kt-lawfirm.com
>     aglass@kt-lawfirm.com

## **CERTIFICATION**

I hereby certify that on October 1, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/ss/ Dennis M. Durao
Dennis M. Durao

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT WOLAK | : | CASE NO. 3:23-cv-00734(AWT) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| TOWN OF OLD SAYBROOK, ET AL., | : | SEPTEMBER 18, 2025 |
| Defendants. | | |

## NOTICE OF INTERLOCUTORY APPEAL

Pursuant to Federal Rule of Appellate Procedure 3(a) (1), notice is hereby given that the

undersigned defendant, JOSHUA ZARBO, hereby appeals to the United States Court of Appeals for the

Second Circuit from the denial of qualified immunity in the following decision of this Court:

> 1. **ORDER: For the reasons set forth in the attached ruling, the defendants' motions for summary judgment (ECF Nos. 51 , 52 ) are hereby GRANTED in part and DENIED in part. James Simpson is no longer a defendant in this case, as summary judgment has been granted in his favor with respect to all the claims against him.**
>
> **"As to defendant Zarbo, Defendant's Motion for Summary Judgment (ECF No. 51) is hereby GRANTED with respect to the First, Second, Fifth, Sixth, Seventh, and Ninth Counts; hereby DENIED without prejudice with respect to Eighth and Tenth Counts; and hereby DENIED with respect to the Third and Fourth Counts."**
>
> **It is so ordered.**
>
> **Signed by Judge Alvin W. Thompson on 8/28/2025. (Bodurtha, M.) (Entered: 08/28/2025)**

The ruling on the defendants' Motion for Summary Judgment [Doc. 75], denying Officer Zarbo

of qualified immunity, was entered on August 28, 2025, and is attached hereto as Exhibit A. The

defendant bases this interlocutory appeal on undisputed facts, and the plaintiff's version of any disputed

fact.

1

The defendant expressly reserves all rights to file an amendment to the foregoing Notice of Interlocutory Appeal and/or an Amended Notice of Interlocutory Appeal pertaining to any rulings, decisions, orders or judgments relating to any motions and/or objections pending before this Court.

DEFENDANT, JOSHUA ZARBO

BY/ss/ Dennis M. Durao
    Dennis M. Durao
    Federal Bar No.: ct29271
    Andrew J. Glass
    Federal Bar No.: ct30054
    Karsten & Tallberg, LLC
    500 Enterprise Drive, Ste. 4B
    Rocky Hill, CT 06067
    T: (860)233-5600
    F: (860)233-5800
    ddurao@kt-lawfirm.com
    aglass@kt-lawfirm.com

## CERTIFICATION

I hereby certify that on September 18, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/ss/ Dennis M. Durao
Dennis M. Durao

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCK HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
                               :
SCOTT WOLAK,                   :
                               :
         Plaintiff,            :
                               :
         v.                    :
                               :
                               :  Civil No. 3:23-cv-734(AWT)
TOWN OF OLD SAYBROOK, JOSHUA   :
ZARBO, and JAMES SIMPSON,      :
                               :
         Defendants.           :
                               :
                               :
------------------------------ x
```

<u>**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**</u>

Plaintiff Scott Wolak brings a fourteen-count Complaint against the Town of Old Saybrook (the "Town") and two officers of the Old Saybrook Police Department (the "Department"), Officer Joshua Zarbo and Patrolman James Simpson. The First Count is a claim pursuant to 42 U.S.C. § 1983 that Zarbo and Simpson arrested the plaintiff without probable cause in violation of the Fourth Amendment. The Second Count is a common law claim against Zarbo and Simpson for false imprisonment. The Third Count is a claim pursuant to 42 U.S.C. § 1983 that Zarbo and Simpson used excessive force against the plaintiff in violation of the Fourth Amendment. The Fourth Count is a claim against Zarbo and Simpson for assault and battery. The Complaint is unclear, but the Fifth and Sixth Counts appear to be claims

-1-

pursuant to 42 U.S.C. § 1983 that Zarbo and/or Simpson failed to intervene to stop an unlawful arrest and failed to intervene to prevent the use of excessive force. The Seventh Count is a claim against Zarbo and Simpson for intentional infliction of emotional distress. The Eighth Count is a claim for negligence against Zarbo and Simpson based on the officers' conduct during the arrest. The Ninth Count is a claim pursuant to 42 U.S.C. § 1983 that Zarbo was deliberately indifferent to the plaintiff's medical needs in violation of the plaintiff's due process rights. The Tenth Count is a claim for negligence against Zarbo based on Zarbo's "fail[ure] to report the mechanism of the injury to [the plaintiff's] treating physicians." Compl. (ECF No. 1) ¶ 49. The Eleventh and Twelfth Counts are claims that the Town is liable for the negligence of Zarbo and Simpson pursuant to Conn. Gen. Stat. § 52-557n. The Thirteenth Count is a claim that the Town is liable for the actions of its employees pursuant to Conn. Gen. Stat. § 7-465. The Fourteenth Count is a claim pursuant to 42 U.S.C. § 1983 against the Town.

For the reasons set forth below, the defendants' motions for summary judgment are being granted in part and denied in part.

## I.  FACTUAL BACKGROUND

On November 18, 2022, at approximately 6:06 p.m., the

-2-

Department received a call from Pamela Listorti,[1] who reported an
erratic driver on Plum Bank Road in Old Saybrook. "Listorti said
that the vehicle was traveling all over the road, failing to
maintain [its] established lane and was only traveling at
20MPH." Pl. Ex. 5 (ECF No. 61-7) at 3.[2] "Listorti was concerned
that the operator of the vehicle was impaired so she contacted
[the police]." Id. "The vehicle continued south on Plum Bank
Road and turned right at the Maple Avenue intersection." Id.
"Listorti then followed the vehicle until it turned onto South
Cove Road from Maple Avenue." Id. Listorti reported that the
license plate number for the vehicle in question was Connecticut
Registration #492ZDH.

Officer Joshua Zarbo and Patrolman James Simpson were
dispatched to locate the vehicle in question. "[Zarbo] was first
in the area so [he] began driving down South Cove Road from
Maple Avenue in search of the vehicle." Pl. Ex. 5 at 3. Zarbo
was driving a Department patrol car. "As [Zarbo] drove past 6

_____

[1] At times the caller's last name is spelled "Listori". The
court uses the spelling in the case/incident report prepared by
defendant Zarbo.

[2] Throughout this ruling, the court cites to the page
numbers assigned by the court's electronic filing system in the
header of any documents or exhibits. The court does not cite to
the page numbers, if any, used in the documents or exhibits
themselves.

South Cove Road [he] observed a black Cadillac Escalade bearing: CT Reg# 492ZOH parked in the driveway approximately 25 feet off of the road." Id. Listorti had stated that the plate number was 492ZDH, and the plate number for the vehicle Zarbo saw was 492ZOH, so the only difference was that the license plate for the Cadillac Escalade contained an "O" instead of a "D". "Based on the similarity in registration plates and the description from Listorti that the vehicle had turned onto South Cove Road, [Zarbo] believed that this was the vehicle in question." Id. During his deposition, he explained that "O" and "D" are commonly confused. See Zarbo Ex. A (ECF No. 51-4) at p.61 l.24 - p.62 l.2.

The plaintiff asserts that "Plaintiff's vehicle was a 2016 Cadillac Esplanade, a black SUV, which was a completely different make, model, and style than the Chevy Silverado pickup truck that [Listorti] described." Pl.'s L.R. 56(a)(2) Statement of Facts in Opp'n to Summ. J. (ECF No. 61-1) ("PSF") ¶ 6. However, Listorti did not give a description of the vehicle, only a license plate number. A check of NCIC/DMV records by the officers indicated that the license plate number reported by Listorti was associated with a Chevy Silverado pickup.

Zarbo parked his patrol car in the roadway. From the road he could see that the brake lights of the Cadillac Escalade were illuminated and that there was someone sitting in the driver's

seat. Zarbo approached the vehicle and, as he did so, he could
see exhaust coming from the tailpipe and hear the engine
running. He turned on his body camera. This was at approximately
6:14 p.m.

Both Zarbo and Simpson had body cameras, and the defendants
have submitted both body camera recordings. The body camera
recordings are accompanied by transcripts that were produced by
a transcription service. The evidence is the body camera
recordings, not the transcripts. If the court quotes from the
accompanying transcripts, the transcripts appear to capture what
is in the body camera recording.

As Zarbo approached the Cadillac Escalade, Zarbo saw the
operator, later identified as the plaintiff, texting or
otherwise on his cellular phone. Zarbo knocked on the window to
get the plaintiff's attention and identified himself as a police
officer. Once the plaintiff rolled his window down, Zarbo again
identified himself by stating "Hi, Officer Zarbo, Old Saybrook
Police."

The body camera recording for this segment of the incident
and accompanying transcript contain the following exchanges:

OFFICER ZARBO:      Hello, police department.

MR. WOLAK:          Yes.

OFFICER ZARBO:      Hi, how are you?

MR. WOLAK:          Very good. How are you?

-5-

```
        OFFICER ZARBO:         Hi, Officer Zarbo, Old Saybrook
                               police[].

        MR. WOLAK:             Oh, no worries.
```

Zarbo Ex. B (ECF No. 51-5) at p.4 l.6 - l.14.

Zarbo believed he detected a strong smell of alcohol on the
plaintiff's breath and asked the plaintiff how much he had had
to drink that night. After the plaintiff responded that he had
nothing to drink, Zarbo saw that the plaintiff was holding a
wine cork in his hand. In addition, Zarbo concluded that the
plaintiff's lips had a purple/red tinge consistent with wine
staining, that the plaintiff's eyes were glassy and bloodshot,
and that the plaintiff was slurring his speech at times during
their conversation.

The plaintiff denies that Zarbo detected a strong smell of
alcohol on the plaintiff's breath and denies "that the
plaintiff's lips had a purple/red tinge consistent with wine
staining, that the plaintiff['s] eyes were glassy and bloodshot,
and that, at times, . . . the plaintiff was slurring his
speech." PSF ¶ 14. The plaintiff also denies that "[b]ased on
[Zarbo's] observations of the plaintiff[,] Officer Zarbo
believed that Wolak was and had been operating his vehicle while
under the influence of alcohol and/or drugs." Id. ¶ 15. However,
the evidence produced by Wolak to support his denial as to what
Zarbo believed does not provide any basis to conclude that Zarbo

-6-

did not believe what he said he believed, only a basis to
conclude that what he believed was not true.

The body camera recording for this segment of the incident
and accompanying transcript contain the following exchanges:

OFFICER ZARBO:        So you okay?

MR. WOLAK:            Yeah, yeah, yeah. What's wrong?

OFFICER ZARBO:        Nothing. I just had a caller behind you
                      going down Plum Bank. They said you
                      were all over the road and --

MR. WOLAK:            Oh, I don't know.

OFFICER ZARBO:        Yeah?

MR. WOLAK:            Yeah.

OFFICER ZARBO:        Oh, boy, how much we have we had to
                      drink tonight?

MR. WOLAK:            Nothing. Why?

OFFICER ZARBO:        Nothing?

MR. WOLAK:            No, no, no.

OFFICER ZARBO:        What's that smell?

MR. WOLAK:            Excuse me?

OFFICER ZARBO:        What's that smell I could smell? And
                      you're holding a wine cork right now.

MR. WOLAK:            Wait a minute.

OFFICER ZARBO:        Weird.

MR. WOLAK:            I'm on the phone.

OFFICER ZARBO:        Okay.

MR. WOLAK:            Communities I service.

-7-

| | |
|---|---|
| OFFICER ZARBO: | Okay. |
| MR. WOLAK: | You from around here? |
| OFFICER ZARBO: | I'm sorry? |
| MR. WOLAK: | Are you from around here? |
| OFFICER ZARBO: | I'm an Old Saybrook Police Officer. |
| MR. WOLAK: | And I'm an Old Saybrook resident. |
| OFFICER ZARBO: | Okay. |
| MR. WOLAK: | Okay. So what do you want from me? |
| OFFICER ZARBO: | Well, that's what I'm asking. How much you had to drink tonight? |
| MR. WOLAK: | I've had nothing. |
| OFFICER ZARBO: | Nothing? You're holding a wine cork right now. |
| MR. WOLAK: | Is that a bad thing? |
| OFFICER ZARBO: | So where'd you get the wine cork from? |
| MR. WOLAK: | I -- look. What's your question for me? |
| OFFICER ZARBO: | How much have you had to drink tonight? |
| MR. WOLAK: | I've had nothing. |

Zarbo Ex. B at p.4 l.15 – p.6 l.8.

Thus, Zarbo asked how much the plaintiff had had to drink that night or referred to the smell of alcohol on four occasions, and he also observed that the plaintiff was holding a wine cork.

Zarbo then asked the plaintiff where the plaintiff was

-8-

coming from and learned the plaintiff was coming from Norwalk.
Zarbo asked whether the plaintiff lived at the address where he
had stopped, and the plaintiff, who lived there, responded that
he did not. Zarbo took the statement as having been made
"sarcastically". Pl. Ex. 5 at 5. The plaintiff then opened the
door of his vehicle, at which point Zarbo told the plaintiff
that he had hit him with the car door. But the plaintiff denies
that he hit Zarbo with the car door. Zarbo ordered the plaintiff
to remain in his car. The body camera recording for this segment
of the incident and accompanying transcript contains the
following exchanges:

| | |
|---|---|
| OFFICER ZARBO: | Where are you coming from? |
| MR. WOLAK: | From Norwalk. |
| OFFICER ZARBO: | From Norwalk? |
| MR. WOLAK: | Yeah. |
| OFFICER ZARBO: | Okay. And do you live here? |
| MR. WOLAK: | No. I'm just driving in this house. |
| OFFICER ZARBO: | Okay. |
| MR. WOLAK: | I don't think -- okay. Let's, let's talk. |
| OFFICER ZARBO: | I don't think being disrespectful like that. It's not -- |
| MR. WOLAK: | I said that -- |
| OFFICER ZARBO: | Okay. I didn't say get out of the car. |
| MR. WOLAK: | I can get out of my car. |

-9-

| OFFICER ZARBO: | No, do not do that. |
| MR. WOLAK: | It's my property. |
| OFFICER ZARBO: | Okay. I didn't say get out of the car yet. |
| MR. WOLAK: | I can get out of my car. |
| OFFICER ZARBO: | Okay. So you just hit me with your door. |
| MR. WOLAK: | Why are you standing here? |
| OFFICER ZARBO: | Do not open the car door on me. |
| MR. WOLAK: | Well, let's do this on video. |
| OFFICER ZARBO: | You're being recorded right now. |
| MR. WOLAK: | Well, I'm going to do it, too. |
| OFFICER ZARBO: | That's fine. |

Zarbo Ex. B at p.6 l.13 – p.7 l.15.

Zarbo then told the plaintiff to get out of his vehicle, intending to conduct a field sobriety test. As the plaintiff stepped out of his vehicle, Zarbo twice directed him to walk towards Zarbo's patrol car. Zarbo's and Simpson's body camera recordings for this segment of the incident show that instead of walking toward the officers and Zarbo's patrol car, the plaintiff walked in the opposite direction, towards his home. See also PSF ¶ 23 ("Officer Zarbo then informed the plaintiff that he was being detained and was not free to leave, to which the plaintiff again responded 'no, no, no.'"). Zarbo's body camera recording and the accompanying transcript contain the

-10-

following exchanges:

| | |
|---|---|
| OFFICER ZARBO: | Sure. How about you come out of the car? We're going to walk this way. |
| MR. WOLAK: | No, no, no. |
| OFFICER ZARBO: | Yup, we're going to walk this way. |
| MR. WOLAK: | No, no, no. |
| OFFICER ZARBO: | Sir, so right now you're being detained. You cannot leave. |
| MR. WOLAK: | No, no, no. |
| OFFICER ZARBO: | No, sir, you cannot leave. You're being detained. I'm going to tell you one more time. Okay. You're detained. |

Zarbo Ex. B at p.7 l.20 – p.8 l.6.

Simpson's body camera recording shows that when Simpson arrived at the plaintiff's residence, Zarbo was standing at the driver's side of the plaintiff's vehicle, talking to the plaintiff. As Simpson walked toward Zarbo and the plaintiff, the plaintiff started walking toward his residence, and Zarbo followed him. Simpson's recording shows that the plaintiff was again told to stop and did not. Zarbo's recording shows that as Zarbo took hold of the plaintiff the plaintiff said "Don't touch me" twice, even though these words are not included in the transcript. See Zarbo Ex. K (Zarbo's body camera recording) at 3:16-3:18; PSF ¶ 28.

Simpson's body camera recording shows that by the time Simpson was within a few feet of Zarbo and the plaintiff, the

-11-

plaintiff was turned around to face Simpson, and Zarbo was standing behind the plaintiff and holding both of the plaintiff's elbows. The plaintiff's hands were not behind him. Once Simpson was next to Zarbo and the plaintiff, Simpson stated, "hands behind your back." Zarbo Ex. B at p.8 l.10. Zarbo then took control of the plaintiff's left wrist, while Simpson took control of the plaintiff's right wrist. The officers and the plaintiff then moved a few steps. Within several seconds, Zarbo took the plaintiff to the ground. Zarbo described this in his case/incident report as a "controlled take down technique". Pl. Ex. 5 at 6.

Once the plaintiff was on the ground, Zarbo and Simpson secured him in handcuffs, which were checked for fit and double locked to prevent further tightening. The plaintiff began complaining of leg pain and told the officers that his leg was broken. While the plaintiff was still on the ground, Zarbo informed him that he was under arrest. The plaintiff then requested a doctor and, when Zarbo asked the plaintiff if he wanted to go to the hospital, the plaintiff responded, "I might have to." PSF ¶ 36. The body camera recording for this segment of the incident and accompanying transcript contain the following exchanges:

> OFFICER ZARBO:     No, sir, you cannot leave. You're being
>                    detained. I'm going to tell you one
>                    more time. Okay. You're detained. Do

|                  |                                                              |
|------------------|--------------------------------------------------------------|
|                  | not -- stop. Hands behind your back. Stop right now.        |
| MR. WOLAK:       | Wow, hold on.                                                |
| OFFICER ZARBO:   | Do not. Stop. Yes, you were fighting. Get your back -- hands behind your back. |
| MR. WOLAK:       | Oh, my God. You broke my --                                  |
| OFFICER ZARBO:   | We have detained. Stop resisting. Keep your hands behind your back. |
| MR. WOLAK:       | You broke my leg.                                            |
| OFFICER ZARBO:   | Okay. Sit up. Sit on your bum.                               |
| MR. WOLAK:       | I can't because you broke my leg.                            |
| OFFICER ZARBO:   | Who, who broke your leg?                                     |
| MR. WOLAK:       | You did.                                                     |
| OFFICER ZARBO:   | No one broke your leg, sir. Stand on up.                     |
| MR. WOLAK:       | You broke my leg.                                            |
| OFFICER ZARBO:   | Sit on up.                                                   |
| MR. WOLAK:       | Hold on.                                                     |
| OFFICER ZARBO:   | Where's your leg injured?                                    |
| MR. WOLAK:       | My leg, my right.                                            |
| OFFICER ZARBO:   | Okay. Can you sit on your butt?                              |
| MR. WOLAK:       | I can't.                                                     |
| OFFICER ZARBO:   | Okay. Where, where's your -- where do you think your leg's broken? |
| MR. WOLAK:       | Can you get me a doctor?                                     |
| OFFICER ZARBO:   | Yup, sure. So right now you're under arrest, sir, okay?      |

-13-

Zarbo Ex. B at p.8 l.4 – p.9 l.7.

At this point, Zarbo was in contact with the police
dispatcher. Within seconds of the plaintiff indicating that he
might need to go to the hospital and within two minutes of the
plaintiff first complaining of leg pain or a broken leg, Zarbo
requested that the dispatcher send Emergency Medical Services to
the scene to treat the plaintiff. Zarbo's body camera recording
shows that he asked the plaintiff to give him additional
information concerning his injury. Here, the transcript refers
to Zarbo as the "EMT", but the EMTs he requested had not yet
arrived.

When the Emergency Medical Services personnel arrived, the
plaintiff was taken directly to the Middlesex Shoreline Medical
Clinic by ambulance. The medical professionals at the hospital
took x-rays and, after reviewing them, sent the plaintiff home
with a diagnosis of arthritis.

The plaintiff was charged with operating a motor vehicle
while under the influence in violation of Conn. Gen. Stat. § 14-
227a and interfering with / resisting an officer in violation of
Conn. Gen. Stat. § 53a-167a. See Pl. Ex. 5 at 2.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the
court determines that there is no genuine issue of material fact
to be tried and that the facts as to which there is no such

-14-

issue warrant judgment for the moving party as a matter of law.
Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S.
317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22
F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry
of summary judgment . . . against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will
bear the burden of proof at trial." Celotex Corp., 477 U.S. at
322.

When ruling on a motion for summary judgment, the court
must respect the province of the jury. The court, therefore, may
not try issues of fact. See, e.g., Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of
Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce
of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is
well-established that "[c]redibility determinations, the
weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of the
judge . . . ." Anderson, 477 U.S. at 255. Thus, the trial
court's task is "carefully limited to discerning whether there
are any genuine issues of material fact to be tried, not
deciding them. Its duty, in short, is confined . . . to issue-
finding; it does not extend to issue-resolution." Gallo, 22 F.3d
at 1224.

Summary judgment is inappropriate only if the issue to be
resolved is both genuine and related to a material fact.
Therefore, the mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment. An issue is "genuine
. . . if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Anderson, 477 U.S. at
248 (internal quotation marks omitted). A material fact is one
that would "affect the outcome of the suit under the governing
law." Id. As the Court observed in Anderson: "[T]he materiality
determination rests on the substantive law, [and] it is the
substantive law's identification of which facts are critical and
which facts are irrelevant that governs." Id. Thus, only those
facts that must be decided in order to resolve a claim or
defense will prevent summary judgment from being granted. When
confronted with an asserted factual dispute, the court must
examine the elements of the claims and defenses at issue on the
motion to determine whether a resolution of that dispute could
affect the disposition of any of those claims or defenses. See
Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d
Cir. 2014) ("'[A] complete failure of proof concerning an
essential element of the nonmoving party's case necessarily
renders all other facts immaterial.'" (quoting Celotex, 477 U.S.
at 323)). Immaterial factual disputes will not prevent summary

-16-

judgment.

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light most
favorable to the non-movant . . . and draw all reasonable
inferences in [the non-movant's] favor." Weinstock v. Columbia
Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson
Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.
1990) (alteration in original)). Nonetheless, the inferences
drawn in favor of the nonmovant must be supported by the
evidence. "[M]ere speculation and conjecture is insufficient to
defeat a motion for summary judgment." Stern v. Trustees of
Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J.,
dissenting) (internal quotation marks omitted) (quoting W. World
Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).
Moreover, the "mere existence of a scintilla of evidence in
support of the [nonmovant's] position will be insufficient;
there must be evidence on which [a] jury could reasonably find
for the [nonmovant]." Anderson, 477 U.S. at 252.

Also, the nonmoving party cannot simply rest on the
allegations in its pleadings since the essence of summary
judgment is to go beyond the pleadings to determine if a genuine
issue of material fact exists. See Weinstock, 224 F.3d at 41.
"Although the moving party bears the initial burden of
establishing that there are no genuine issues of material fact,"

-17-

id., if the movant demonstrates an absence of such issues, a
limited burden of production shifts to the nonmovant, who must
"demonstrate more than some metaphysical doubt as to the
material facts, . . . [and] must come forward with specific
facts showing that there is a genuine issue for trial,"
Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d
Cir. 1993) (emphasis, quotation marks and citations omitted).
"Accordingly, unsupported allegations do not create a material
issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant
fails to meet this burden, summary judgment should be granted.

Finally, "the Court may consider only admissible evidence
in ruling on summary judgment." Ferraresso v. Town of Granby,
646 F. Supp. 2d 296, 301 (D. Conn. 2009).

## III. DISCUSSION

### A. Section 1983 False Arrest (First Count) and False Imprisonment (Second Count)

The First Count is a claim pursuant to 42 U.S.C. § 1983
against Zarbo and Simpson for false arrest in violation of the
Fourth Amendment. The Second Count is a common law claim for
false imprisonment against Zarbo and Simpson.

As to the First Count, "[i]n analyzing claims alleging the
constitutional tort of false arrest, 'we have generally looked
to the law of the state in which the arrest occurred.'" Russo v.
City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007) (citation

-18-

omitted). "And, in Connecticut, a false arrest claim cannot lie
when the challenged arrest was supported by probable cause." Id.
at 203 (citing Beinhorn v. Saraceno, 23 Conn. App. 487, 491
(1990)). Thus, "[t]o prevail on a Section 1983 false arrest
claim, a plaintiff must establish that (1) the defendant
intentionally arrested him or had him arrested, (2) the
plaintiff was aware of the arrest, (3) there was no consent to
the arrest, and (4) the arrest was not supported by probable
cause." Weinstock v. Wilk, 296 F. Supp. 2d 241, 246 (D. Conn.
2003) (citation omitted).

As to the Second Count, "[f]alse arrest and false
imprisonment overlap; the former is a species of the latter."
Wallace v. Kato, 549 U.S. 384, 388 (2007). Under Connecticut
law, "the applicable law for these two causes of action is
identical." Outlaw v. City of Meriden, 43 Conn. App. 387, 392
(1996). "False imprisonment, or false arrest, is the unlawful
restraint by one person of the physical liberty of another[.]"
Nodoushani v. S. Connecticut State Univ., 152 Conn. App. 84, 92
(2014) (citation omitted). "[A] plaintiff's false arrest claim
begins accruing at the time of arrest, or at the time the
plaintiff was otherwise held pursuant to legal process, and
[courts in this District] do not take into consideration the
ultimate disposition of the criminal case." Harvey v. Town of
Greenwich, No. 3:17-cv-1417 (SRU), 2019 WL 1440385, at *7 (D.

-19-

Conn. Mar. 31, 2019) (citing cases). "[T]he law is clear that a
cause of action for false imprisonment cannot be sustained where
the plaintiff's arrest results from the defendants' institution
of and compliance with proper legal authority . . . ." Lo Sacco
v. Young, 20 Conn. App. 6, 21 (1989). "To prevail on a claim of
false arrest, the plaintiff must establish that the arrest was
made without probable cause." Campbell v. Porter, 212 Conn. App.
377, 390 (2022).

Thus, "[t]he existence of probable cause to arrest
constitutes justification and 'is a complete defense to an
action for false arrest,' whether that action is brought under
state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852
(2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98,
102 (2d Cir. 1994)).

"In general, probable cause to arrest exists when the
officers have knowledge or reasonably trustworthy information of
facts and circumstances that are sufficient to warrant a person
of reasonable caution in the belief that the person to be
arrested has committed or is committing a crime." Weyant, 101
F.3d at 852. "When determining whether probable cause exists
courts must consider those facts available to the officer at the
time of the arrest and immediately before it[.]" Panetta v.
Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Caldarola v.
Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)) (emphasis omitted).

-20-

"The validity of an arrest does not depend upon an ultimate
finding of guilt or innocence." <u>Peterson v. County of Nassau</u>,
995 F.Supp. 305, 313 (E.D.N.Y. 1998) (citing <u>Pierson v. Ray</u>, 386
U.S. 547, 555 (1967)). "The fact that an innocent explanation
may be consistent with the facts . . . does not negate probable
cause." <u>United States v. Fama</u>, 758 F.2d 834, 838 (2d Cir. 1985).

"[O]nly the probability, and not a prima facie showing, of
criminal activity is the standard of probable cause." <u>Illinois
v. Gates</u>, 462 U.S. 213, 235 (1983) (citation and internal
quotation marks omitted). "The existence of probable cause must
be determined on the basis of the totality of the circumstances,
and 'where law enforcement authorities are cooperating in an
investigation . . . , the knowledge of one is presumed shared by
all.'" <u>Calamia v. City of N.Y.</u>, 879 F.2d 1025, 1032 (2d Cir.
1989) (citations omitted). "[A] claim for false arrest turns
only on whether probable cause existed to arrest a defendant,
and [] it is not relevant whether probable cause existed with
respect to each individual charge, or, indeed, any charge
actually invoked by the arresting officer at the time of
arrest." <u>Jaegly v. Couch</u>, 439 F.3d 149, 154 (2d Cir. 2006). "The
question of whether or not probable cause existed may be
determinable as a matter of law if there is no dispute as to the
pertinent events and the knowledge of the officers, or may
require a trial if the facts are in dispute[.]" <u>Weyant</u>, 101 F.3d

-21-

at 852 (citations omitted).

The defendants contend that there was "ample probable cause to arrest [the plaintiff] for interfering with an officer and driving under the influence." Zarbo Mem. in Support of Mot. for Summ. J. (ECF No. 51-1) ("Zarbo Memorandum") at 11. The court agrees because there is no genuine issue of material fact.

It is undisputed that Wolak was arrested for operating a motor vehicle while under the influence of liquor or drugs or while having an elevated blood alcohol content in violation of Conn. Gen. Stat. § 14-227a. That statute provides in relevant part:

> No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content.

Conn. Gen. Stat. § 14-227a.

A concerned citizen reported an erratic driver who was driving all over the road, failing to maintain a proper lane, and only travelling at 20 miles per hour. The citizen had followed the vehicle until it turned onto South Cove Road from Maple Avenue. Zarbo began driving down South Cove Road from Maple Avenue and saw a vehicle that had a license plate number almost identical to the license plate number that had been

-22-

reported by the concerned citizen, the only difference being an
"O" instead of a "D". When Zarbo approached the plaintiff's
vehicle, the engine was running. When he spoke to the plaintiff,
he saw that the plaintiff was holding a wine cork, and the
plaintiff's answers to Zarbo's questions were at times
nonresponsive. Also, Zarbo believed that he smelled alcohol on
the plaintiff's breath, that the plaintiff's eyes were glassy
and bloodshot, and that, at times, the plaintiff was slurring
his speech.

In light of the foregoing, the officers had a combination
of reasonably trustworthy information and personal knowledge
about facts and circumstances that were sufficient to establish
probable cause to arrest the plaintiff for drunk driving.

The plaintiff was also arrested for interfering with /
resisting an officer in violation of Conn. Gen. Stat. § 53a-
167a. That statute provides in relevant part:

> A person is guilty of interfering with an officer when such
> person obstructs, resists, hinders or endangers any peace
> officer or firefighter in the performance of such peace
> officer's or firefighter's duties.

Conn. Gen. Stat. § 53a-167a(a).

There is no genuine issue as to the fact that the plaintiff
refused to obey the lawful commands of the officers after he got
out of his vehicle. The body camera recordings of both Zarbo and
Simpson establish that the plaintiff said "no" when he was told

-23-

that he was being detained and could not leave and also walked away from the officers toward his residence. Wolak's explanation after the fact that he intended to go to the bathroom, an explanation which he never shared with the officers at the time, is immaterial.

In light of the foregoing, the officers had a combination of reasonably trustworthy information and personal knowledge about facts and circumstances that were sufficient to establish probable cause to arrest the plaintiff for the offense of obstructing, resisting, or hindering a police officer in the performance of his duties.

Because there is no genuine issue as to the fact that there was probable cause to arrest the plaintiff for drunk driving and interfering with / resisting an officer, the plaintiff cannot prove his claim in either the First Count or the Second Count.

In his opposition, the plaintiff argues that genuine issues of material fact exist with respect to these claims because "the Defendants' warrantless entry onto the curtilage of Wolak's home violated the Fourth Amendment" and a "search of the curtilage that occurs without a warrant based on probable cause or an exception to the warrant requirement violates the Fourth Amendment." Pl. Opposition (ECF No. 61) at 8 (emphasis omitted). However, as the defendants point out, there is no claim for unlawful entry onto the plaintiff's property in the Complaint,

-24-

and the plaintiff cannot assert one now. See Mignault v. Ledyard
Pub. Sch., 792 F. Supp. 2d 289, 301 (D. Conn. 2011) ("It is well
established that a party cannot assert a claim for the first
time in its motion papers." (citation omitted)).

In any event, the plaintiff has not created a genuine issue
as to whether Zarbo and Simpson violated his Fourth Amendment
rights by entering his property because "[a] police officer not
armed with a warrant may approach a home in hopes of speaking to
its occupants, because that is 'no more than any private citizen
might do.'" Florida v. Jardines, 569 U.S. 1, 8 (2013) (quoting
Kentucky v. King, 563 U.S. 452, 469 (2011)).

The plaintiff also argues that Zarbo did not have
reasonable suspicion to detain him because the plaintiff's
vehicle "was a completely different color, style make and model
from the vehicle that had been reported as driving erratically."
Pl. Opposition at 11. However, there is no genuine issue as to
the fact that Listorti did not report the make, model, or color
of the vehicle she was following. Rather, she reported that "the
vehicle she was traveling behind was bearing CT Reg #492ZDH",
and the officers who received that report checked NCIC/DMV
records and learned that the vehicle associated with the
reported license plate number was a Chevy Silverado pickup
truck. See Zarbo Ex. A (Zarbo Dep. Transcript) at p.59 l.8 - l.9
("She did not say it was a Chevy Silverado pickup.").

-25-

Therefore, the defendants' motions for summary judgment are being granted with respect to the First and Second Counts.

## B. **Section 1983 Excessive Force (Third Count); Assault and Battery (Fourth Count)**

The Third Count is a claim pursuant to 42 U.S.C. § 1983 against each of Zarbo and Simpson for use of excessive force in violation of the Fourth Amendment. The Fourth Count is a common law claim for assault and battery against each of Zarbo and Simpson.

As to the Third Count, "[p]olice officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). The court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

-26-

is actively resisting arrest or attempting to evade arrest by
flight." Id. at 396.

"The 'reasonableness' of a particular use of force must be
judged from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight." Id. at
396 (citing Terry v. Ohio, 392 U.S. 1, 20–22 (1968)). "The
calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second
judgments -- in circumstances that are tense, uncertain, and
rapidly evolving -- about the amount of force that is necessary
in a particular situation." Id. at 396-97.

"[T]he right to make an arrest carries with it the right to
use some degree of physical coercion as long as the force used
is reasonable based on the perception of the arresting officer
at the time of the arrest." Lawson v. Cnty. of Suffolk, 920
F.Supp.2d 332, 341 (E.D.N.Y. 2013) (citations and internal
quotation marks omitted). See also Graham, 490 U.S. at 396 ("Our
Fourth Amendment jurisprudence has long recognized that the
right to make an arrest or investigatory stop necessarily
carries with it the right to use some degree of physical
coercion or threat thereof to effect it."). "The fact that a
person whom a police officer attempts to arrest resists,
threatens, or assaults the officer no doubt justifies the
officer's use of some degree of force, but it does not give the

-27-

officer license to use force without limit." <u>Sullivan v.
Gagnier</u>, 225 F.3d 161, 165-66 (2d Cir. 2000). "The force used by
the officer must be reasonably related to the nature of the
resistance and the force used, threatened, or reasonably
perceived to be threatened, against the officer." <u>Id.</u> at 166.

The plaintiff asserts that "[t]he Defendants had no
objective basis to believe Wolak had committed a crime[.]" Pl.
Opposition at 14. The plaintiff also asserts that "[a]ny
reasonable jury could conclude <u>any</u> use of force at th[e] moment
was unreasonable." <u>Id.</u> at 13 (emphasis in original). He avers
that after he stepped away from his car, "Zarbo and Simpson had
my arms pinned behind my back when Zarbo picked me up and
slammed me violently to the ground[.]" Pl. Ex. 1 (ECF No. 61-3)
¶ 18.

For the reasons discussed above with respect to the First
and Second Counts, the plaintiff has failed to create a genuine
issue as to the fact that the officers had probable cause to
believe that he had committed a crime.

The recording from Simpson's body camera establishes that
there is no genuine issue as to the fact that Simpson did not
use excessive force against the plaintiff. The only time Simpson
touched the plaintiff, prior to the take down effectuated by
Zarbo, was when he grabbed the plaintiff's right arm in an
effort to place handcuffs on him. Then, after the plaintiff was

-28-

on the ground, Simpson touched the plaintiff as he and Zarbo
were trying to place handcuffs on the plaintiff. The plaintiff
does not contend that the actions of either Zarbo or Simpson,
during the time they were placing the plaintiff in handcuffs
while he was on the ground, constituted excessive force.

As to Zarbo, the body camera recording shows that
immediately before Zarbo takes the plaintiff to the ground,
Zarbo has told him he is being detained and cannot leave and
that the plaintiff has said "No", at which time Zarbo again
tells the plaintiff that he cannot leave and then tells him
again that he is detained. It also shows that Simpson, at the
same time, tells the plaintiff to put his hands behind his back.
See Zarbo Ex. B at p.49 l.4 – l.11. The plaintiff avers, "I
began to walk toward my house during which time I was told to
stop; at no time was I fleeing and I attempted to say that I
needed to relieve myself in the bathroom of my own house." Pl.
Ex. 1 ¶ 16. But the body camera recordings and the accompanying
transcripts do not show that the plaintiff made any statement
about going to the bathroom. Rather, they show that Zarbo and
Simpson were attempting to get the plaintiff to comply with
lawful orders and control him. The defendants argue that courts
have held that under similar circumstances that performing a
controlled take down technique does not constitute excessive
force. They cite to the following cases, among others: McKnight

-29-

v. Vasile, No. 11-cv-6328P (MWP), 2017 WL 1176051, at *25
(W.D.N.Y. Mar. 30, 2017) ("In light of McKnight's refusal to
comply with Vasile's orders to put her hands behind her back,
her physical resistance to the officers' efforts to handcuff
her, her attempt to get inside her house, and her calls to
others inside the house, I find that Vasile's conduct in
grabbing her arm and his eventual use of the straight arm bar
were reasonable and did not amount to excessive force.");
Brayshaw v. City of Burlington, No. 5:13-cv-253 (CR), 2015 WL
1523019, at *12 (D. Vt. Apr. 3, 2015) ("It is undisputed that
Officer Bellavance's use of the arm bar takedown occurred only
after he had employed a verbal command and then a minimal level
of force to move Plaintiff away from the crowd. Officer
Bellavance's escalation of force was in direct response to
Plaintiff's non-compliant conduct."); Cardinal v. Allain, No.
CV-05-107 (JJB), 2007 WL 3256447, at *4 (M.D. La. Nov. 5, 2007)
("Deputy Balcuns used a straight arm bar take down tactic to
bring Mr. Cardinal to the ground. Such a tactic was not
excessive force because Mr. Cardinal was jerking way from Deputy
Balcuns to prevent Deputy Balcuns from handcuffing him.").

However, these cases do not stand for the proposition that
a controlled take down technique can never be objectively
unreasonable. Rather, these cases are illustrative of the fact
that, depending on the particular facts and circumstances, a

-30-

court can conclude that there is no genuine issue as to the fact
that use of such a technique was not objectively unreasonable.
If, in order to prevail on this claim, the plaintiff had to
prove, as he avers, that Zarbo picked him up and slammed him to
the ground, he could not prove his claim because Simpson's body
camera recording shows that Zarbo did not pick up the plaintiff.
But even though Zarbo did not pick up the plaintiff, the body
camera recordings show that the situation was fluid and rapidly
evolving. The determination as to whether Zarbo's actions were
objectively unreasonable is not like the determination as to
whether Zarbo picked up the plaintiff because one can look at
Simpson's body camera recording and see that Zarbo did not pick
up the plaintiff. On the other hand, to determine that Zarbo
taking the plaintiff to the ground at the point in time when he
did so and with the amount of force he used was not objectively
unreasonable, the court must assess what each of the three
people present did at particular points in time. The court would
have to watch the body camera recordings, hear from each of the
three people present his explanation of what he was doing and
why, and determine whether to credit that explanation. That is a
jury function, not the function of a judge. Therefore, the court
concludes that genuine issues of material fact exist with
respect to the excessive force claim against Zarbo.

Zarbo contends that, in any event, he is entitled to
summary judgment on the plaintiff's 42 U.S.C. § 1983 excessive
force claim on the basis of qualified immunity. "Qualified
immunity, an affirmative defense as to which the defendants have
the burden of proof, shields officials 'from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known[.]'" Jackler v. Byrne, 658
F.3d 225, 242 (2d Cir. 2011) (quoting Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982)) (citation omitted). "A right is 'clearly
established' when '[t]he contours of the right [are]
sufficiently clear that a reasonable official would understand
that what he is doing violates that right.'" Id. at 242-43
(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This
is not to say that an official action is protected by qualified
immunity unless the very action in question has previously been
held unlawful, but it is to say that in the light of pre-
existing law the unlawfulness must be apparent." Id. at 243
(quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). "To
determine whether defendants enjoy qualified immunity, 'we
consider the specificity with which a right is defined, the
existence of Supreme Court or Court of Appeals case law on the
subject, and the understanding of a reasonable officer in light
of preexisting law.'" Chamberlain Est. of Chamberlain v. City of

-32-

White Plains, 960 F.3d 100, 110 (2d Cir. 2020) (quoting Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014)).

"It is well established that 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201–02 (2001)). Zarbo argues that "[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." Zarbo Memorandum at 23 (quoting Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). He accurately cites to Figueroa v. Mazza, 825 F.3d 89 (2d Cir. 2016) for the proposition that the "inquiry is not whether the officer should have acted as he did. . . . It is instead whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful." Figueroa, 825 F.3d at 100 (emphases omitted). He maintains that, here, "the discrete use of force that was necessary to control and detain the plaintiff was permissible by law . . . ." Zarbo Memorandum at 24. "[T]he matter of whether a [defendant's] conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly

established right, is a mixed question of law and fact." <u>Kerman</u>

<u>v. City of New York</u>, 374 F.3d 93, 109 (2d Cir. 2004) (citations

omitted). In <u>Kerman</u>, the court explained:

> A contention that -- notwithstanding a clear delineation of
> the rights and duties of the respective parties at the time
> of the acts complained of -- it was objectively reasonable
> for the official to believe that his acts did not violate
> those rights "has its principal focus on the particular
> facts of the case." <u>Hurlman v. Rice</u>, 927 F.2d 74, 78-79 (2d
> Cir. 1991); <u>see</u>, <u>e.g.</u>, <u>Oliveira v. Mayer</u>, 23 F.3d [642,
> 649-50 (2d Cir. 1994)]. Although a conclusion that the
> defendant official's conduct was objectively reasonable as
> a matter of law may be appropriate where there is no
> dispute as to the material historical facts, <u>see</u>, <u>e.g.</u>,
> [Lennon v. Miller, 66 F.3d 416, 421 (2d Cir.1995)]; <u>Glass</u>
> <u>v. Mayas</u>, 984 F.2d 55, 58 (2d Cir. 1993); <u>Robison v. Via</u>,
> 821 F.2d 913, 921 (2d Cir. 1987), if there is such a
> dispute, the factual questions must be resolved by the
> factfinder, <u>see</u>, <u>e.g.</u>, <u>Kerman II</u>, 261 F.3d at 241;
> <u>Oliveira</u>, 23 F.3d at 649; [Calamia, 879 F.2d at 1036].
> "Though '[i]mmunity ordinarily should be decided by the
> court,' . . . that is true only in those cases where the
> facts concerning the availability of the defense are
> undisputed; otherwise, jury consideration is normally
> required . . . ." <u>Oliveira</u>, 23 F.3d at 649 (quoting <u>Hunter</u>
> <u>v. Bryant</u>, 502 U.S. 224, 228 (1991)). After receiving "the
> jury['s] . . . decision as to] 'what the facts were that
> the officer faced or perceived,' " the court then may "make
> the ultimate legal determination of whether qualified
> immunity attaches on those facts." [<u>Stephenson</u>, 332 F.3d at
> 81]; <u>see</u>, <u>e.g.</u>, <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir.)
> ("If there are unresolved factual issues which prevent an
> early disposition of the defense, the jury should decide
> these issues on special interrogatories. The ultimate legal
> determination whether . . . a reasonable police officer
> should have known he acted unlawfully" should be made by
> the court "on the facts found" by the jury. (emphasis
> added)), cert. denied, 498 U.S. 967 (1990).

<u>Kerman</u>, 374 F.3d at 109 (cleaned up).

Here, even after putting aside the plaintiff's contention

that Zarbo picked him up before taking him to the ground, there

is a dispute as to the material facts. Thus, this is a case
where the court must make the determination as to whether
Zarbo's conduct was objectively reasonable based on pertinent
facts found by the jury. Therefore, Zarbo is not entitled to
summary judgment on the grounds of qualified immunity.

As to the Fourth Count, a "battery is a harmful or
offensive contact with the person of another." Conn. Civil Jury
Instructions §3.13-2. "An assault is an act that causes another
person to be placed in imminent apprehension of a harmful or
offensive contact with that person." Id. § 3.13-1. Thus, a
plaintiff "must prove that defendants applied force or violence
to him and that the application of force or violence was
unlawful." Conroy v. Caron, 275 F. Supp. 3d 328, 356 (D. Conn.
2017) (quoting Odom v. Matteo, 772 F. Supp. 2d 377, 395 (D.
Conn. 2011)).

"[A] police officer may use such force as the officer
reasonably believes necessary." Lagasse v. City of Waterbury,
No. 3:09-cv-391(VLB), 2011 WL 2709749, at *9 (D. Conn. 2011)
(citing Carey v. Maloney, 480 F. Supp. 2d 548, 560 (D. Conn.
2007)). See also Conn. Gen. Stat. § 53a-22(b)("[A] peace officer
. . . is justified in using physical force upon another person
when and to the extent that he or she reasonably believes such
use to be necessary to: [] [e]ffect an arrest or prevent the
escape from custody of a person whom he or she reasonably

-35-

believes to have committed an offense. . . ."); <u>Miller v.
Lovett</u>, 879 F.2d 1066, 1072 (2d Cir. 1989) (the State and
federal issues "in excessive force cases" are "closely tied").

Consequently, because the court has concluded there is no
genuine issue as to the fact that Simpson did not use excessive
force against the plaintiff, the court concludes that he is
entitled to summary judgment on the plaintiff's common law claim
for assault and battery. Because genuine issues of material fact
exist as to whether the force used by Zarbo was objectively
unreasonable under all the facts and circumstances, the court
concludes that genuine issues of material fact also exist as to
whether Zarbo only used such force as he reasonably believed was
necessary.

Therefore, Simpson's motion for summary judgment is being
granted with respect to the Third and Fourth Counts, and Zarbo's
motion for summary judgment is being denied with respect to
those Counts.

### C. Failure to Intervene (Fifth and Sixth Counts)

The Complaint is unclear with respect to these two counts.
The Fifth Count names both Zarbo and Simpson in the caption. It
is a claim pursuant to 42 U.S.C. § 1983, which may be against
each of Zarbo and Simpson, for failure to intervene because
"Defendant failed to intervene to prevent and/or stop the
unreasonable and unjustifiable arrest of the Plaintiff, despite

-36-

the duty to do so." Compl. ¶ 31. The Sixth Count names only
Simpson in the caption. It is a claim pursuant to 42 U.S.C. §
1983, which may be against each of Zarbo and Simpson, for
failure to intervene because "[e]ach Defendant failed to
intervene to prevent and/or stop the unreasonable and
unjustifiable arrest of the Plaintiff, despite the duty to do
so." Id. ¶ 33. Notwithstanding the fact that paragraph 33
references an unreasonable and unjustifiable arrest, the parties
appear to understand this claim to be one for failure to
intervene to prevent the use of excessive force. See Town &
Simpson Mem. in Support of Mot. for Summ. J. (ECF No. 52-1)
("Town and Simpson Memorandum") at 12; Pl. Opposition at 16.

       In his opposition, the plaintiff does not contest Zarbo's
motion for summary judgment with respect to either the Fifth
Count or the Sixth Count and, therefore, these counts are deemed
abandoned with respect to defendant Zarbo. See Jackson v. Fed.
Exp., 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when
appropriate, infer from a party's partial opposition that
relevant claims or defenses that are not defended have been
abandoned."); Taylor v. City of New York, 269 F. Supp. 2d 68, 75
(E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when
a party moves for summary judgment on one ground and the party
opposing summary judgment fails to address the argument in any
way.").

"An officer who fails to intercede is liable for the
preventable harm caused by the actions of the other officers
where that officer observes or has reason to know: (1) that
excessive force is being used; (2) that a citizen has been
unjustifiably arrested; or (3) that any constitutional violation
has been committed by a law enforcement official[.]" Anderson v.
Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). "In
order for liability to attach, there must have been a realistic
opportunity to intervene to prevent the harm from occurring."
Id. "Whether an officer had sufficient time to intercede or was
capable of preventing the harm being caused by another officer
is an issue of fact for the jury unless, considering all the
evidence, a reasonable jury could not possibly conclude
otherwise." Id.

With respect to the Fifth Count, Simpson is entitled to
summary judgment because the court has determined that there is
no genuine issue as to the fact that the defendants had probable
cause to arrest the plaintiff. Consequently, the plaintiff
cannot establish that he was unjustifiably arrested.

Simpson is also entitled to summary judgment on the Sixth
Count. Simpson's body camera recording establishes that he did
not have a realistic opportunity to intervene before Zarbo
performed a controlled take down technique on the plaintiff.
Simpson reached out and grabbed Wolak's arm, and both the

-38-

officers were attempting to place handcuffs on Wolak, while he
was moving. The situation was fluid and rapidly evolving.
Approximately five seconds after Simpson arrived at the side of
Zarbo and the plaintiff, the plaintiff was on the ground.
Considering all of the evidence, a reasonable jury could not
possibly conclude that Simpson had a realistic opportunity to
intervene before Zarbo performed the take down technique.
Compare O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)
("The three blows were struck in such rapid succession that
Conners had no realistic opportunity to attempt to prevent them.
This was not an episode of sufficient duration to support a
conclusion that an officer who stood by without trying to assist
the victim became a tacit collaborator.") with Jean-Laurent v.
Wilkinson, 540 F. Supp. 2d 501, 507, 513 (S.D.N.Y. 2008), aff'd
sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir.
2012) ("[T]he duration of the second strip search was of
sufficient duration that officers who were present had the
opportunity to intervene.").

Therefore, the defendants' motions for summary judgment are
being granted with respect to the Fifth and Sixth Counts.

### D. **Intentional Infliction of Emotional Distress (Seventh Count)**

The Seventh Count is a claim for intentional infliction of
emotional distress against each of Zarbo and Simpson. Neither

-39-

the Seventh Count nor the plaintiff's opposition specify which actions of the defendants are the basis for this claim, but it appears that the plaintiff bases this claim on his contentions with respect to false arrest and the use of excessive force.

To prove a claim for intentional infliction of emotional distress, the plaintiff must prove the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Bell v. Bd. of Educ. of City of W. Haven, 55 Conn. App. 400, 409-10 (1999) (citations omitted).

The defendants argue that they are entitled to summary judgment on this claim because the plaintiff has not created a genuine issue of material fact as to the second element, i.e., that their conduct was extreme and outrageous, nor as to the fourth element, i.e., that the plaintiff sustained emotional

-40-

distress that was severe. The court agrees.

With respect to the second element, "[w]here an intentional infliction of emotional distress claim is based on a plaintiff's arrest, and probable cause exists for that arrest, an intentional infliction of emotional distress claim may not stand: enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society." Lawrence v. Town of Westport, No. 3:22-cv-1598 (AWT), 2024 WL 3455828, at *11 (D. Conn. July 18, 2024) (quoting Castro v. Narcisse, No. 3:12-CV-01535 (VLB), 2015 WL 2342401, at *16 (D. Conn. May 14, 2015)). Thus, because the court has concluded there was probable cause to arrest the plaintiff, he cannot establish this claim based on a false arrest.

To the extent this claim is based on use of excessive force by Simpson, the plaintiff cannot establish this claim because there is no genuine issue as to the fact that Simpson did not use excessive force against the plaintiff.

As to Zarbo, the court has concluded that genuine issues of material fact exist with respect to the excessive force and assault and battery claims against him. However, the plaintiff has failed to produce evidence that could establish that, to the extent the force used by Zarbo could be deemed objectively unreasonable, the force was so outrageous in character or so extreme as to constitute extreme and outrageous conduct. As

-41-

discussed above, the plaintiff has not created a genuine issue
as to the fact that Zarbo did not pick him up and slam him to
the ground. Rather, the plaintiff's evidence as to Zarbo is that
at a time when the plaintiff was ignoring lawful commands from
Zarbo and from Simpson and they were attempting to control the
plaintiff, Zarbo took the plaintiff to the ground.

The Department has a policy on the use of force. Under that
policy, officers are "authorized to use physical force when the
officer reasonably believes it is immediately necessary at the
time, to accomplish lawful objectives", including, but not
limited to "[e]ffect an arrest or prevent the escape from
custody of a person whom he or she reasonably believes to have
committed an offense" or "[e]ffect other lawful objectives."
Town Ex. H (ECF No. 52-10) at 5. Under the policy, "[a]n
officer's use of force response level shall be objectively
reasonable, based upon the totality of the circumstances known
or perceived by the officer at the time force was used[,
including, but] not limited to . . . [l]evel of resistance". Id.
Even if a finder of fact were to conclude that the force used by
Zarbo was objectively unreasonable or was more than he
reasonably believed was necessary, the fact that the plaintiff
was refusing to comply with the lawful orders of the officers,
that Zarbo and Simpson were both attempting to control the
plaintiff, that the situation was fluid and rapidly evolving,

-42-

and that Zarbo had to make a judgment call on the spot as to what force to use mean that Zarbo's conduct fell well short of constituting extreme and outrageous conduct. Compare Velez v. McDonald, No. 3:10-CV-483 (JBA), 2011 WL 1215442, at *5 (D. Conn. Mar. 27, 2011) ("Being maced in the face at close range while restrained and compliant, [and] slapped and slammed against the wall and floor, . . . where a plaintiff posed no risk to the corrections officers, may be found to constitute extreme and outrageous conduct."); Mejia v. City of New York, 119 F. Supp. 2d 232, 284-86 (E.D.N.Y. 2000) (concluding plaintiffs "produced evidence of conduct sufficiently extreme and outrageous", including that the officer "conspired to manufacture the evidence on which . . . a conviction would be based", made "disparaging remarks . . . regarding [plaintiffs'] Colombian nationality", threatened one plaintiff that her "children would be taken from her", and ordered the same plaintiff "to be strip searched"); Coggins v. Cnty. of Nassau, 254 F. Supp. 3d 500, 524 (E.D.N.Y. 2017) (concluding the "evidence that [the officers] lied repeatedly in the course of the investigation and prosecution of plaintiff, that [one] grabbed plaintiff roughly during the traffic stop and threatened him physically, and that [the other officer] shouted to 'Just shoot him in the back' as plaintiff fled" constituted "sufficient evidence of outrageous conduct to support his IIED

-43-

claim.").

With respect to the fourth element, "Connecticut courts
have held that emotional distress is severe when it reaches a
level which no reasonable person could be expected to endure."
Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 175-76 (D.
Conn. 2003) (internal quotation marks and citations omitted).
"The Connecticut Appellate Courts have never adopted a bright-
line test for determining what kinds of mental distress are
sufficiently serious to sustain a claim of IIED, but the trial
courts have consistently used the standard set forth in the
Restatement." Stubbs v. Gerken, No. 3:21-CV-1525 (SALM), 2022 WL
4585296, at *17 (D. Conn. Sept. 29, 2022) (cleaned up). "Comment
(j) to the Restatement (Second) of Torts, § 46, provides in
relevant part: The law intervenes only where the distress
inflicted is so severe that no reasonable [person] could be
expected to endure it. The intensity and the duration of the
distress are factors to be considered in determining its
severity. Emotional distress is unlikely to be considered severe
in the absence of treatment, medical, psychological, or
otherwise." Id. at *17 (quoting Maselli v. Reg'l Sch. Dist. No.
10, 198 Conn. App. 643, 667 (2020)) (alteration in original).
"Merely alleging extreme emotional distress without supporting
factual allegations is legally insufficient to support a claim
of intentional infliction of emotional distress. The supporting

-44-

factual allegations must be more than conclusory statements."
Zadrowski v. Town of Plainville, No. 3:09-cv-1367(DJS), 2013 WL
5435491, at *12 (D. Conn. Sept. 30, 2013) (internal quotation
marks and citations omitted).

While emotional distress is unlikely to be considered
severe where medical treatment is not sought, the failure to
seek medical treatment does not preclude a finding of severe
emotional distress. As explained in Powell v. Jones-Soderman:

> [The plaintiff] did not seek medical treatment, and,
> although a failure to seek medical treatment does not
> preclude a finding of severe emotional distress, [Birdsall,
> 249 F. Supp. 2d at 175], he did not testify as to the
> intensity and frequency of his headaches, sleeplessness and
> appetite fluctuation, all of which can be common responses
> to stress. Thus, the Court finds that Powell has not
> carried his burden of proof on the intentional infliction
> of emotional distress claim because he has failed to
> establish the fourth element, requiring him to establish
> that his emotional distress was severe.

433 F. Supp. 3d 353, 378 (D. Conn. 2020), aff'd, 849 F. App'x
274 (2d Cir. 2021).

Here, the plaintiff asserts that "[f]or purposes of summary
judgment, Wolak's emotional distress was severe", citing to
paragraphs 32 to 44 of his affidavit. Pl. Opposition at 22.
In paragraph 32 of his affidavit, Wolak avers that "I was
emotionally affected by this as I had to attend DMV hearings,
and court appearances for driving under the influence, and
suffer prolonged pain to the present day." Pl. Ex. 1 ¶ 32. In
paragraph 42, he avers that "[t]his entire event has had a

-45-

significant deleterious effect on every aspect of my life in
particular my reputation; my health; and my emotional well-being
which I will carry with me on a permanent basis." Id. ¶ 42.
There is no evidence that Wolak received medical treatment for
emotional distress, and these statements by him do not create a
genuine issue as to whether he sustained severe emotional
distress.

Therefore, the motions for summary judgment are being
granted with respect to the Seventh Count.

### E. § 1983 Deliberate Indifference to Medical Needs (Ninth Count)

The Ninth Count is a claim pursuant to 42 U.S.C. § 1983
against Zarbo for deliberate indifference to the plaintiff's
medical needs in violation of the Due Process Clause of the
Fourteenth Amendment. "A pretrial detainee's claims [of
deliberate indifference to medical needs] are evaluated under
the Due Process Clause", as opposed to the Cruel and Unusual
Punishments Clause of the Eighth Amendment, because "pretrial
detainees have not been convicted of a crime and thus may not be
punished in any manner -- neither cruelly and unusually nor
otherwise." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)
(internal quotation marks and citations omitted). To establish
this claim, the plaintiff "must meet two requirements: (1) that
[the plaintiff] had a serious medical need . . ., and (2) that

-46-

the [defendant] acted with deliberate indifference to such needs." Charles v. Orange Cnty., 925 F.3d 73, 86 (2d Cir. 2019) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)). For purposes of his motion for summary judgment only, Zarbo concedes that the plaintiff had a serious medical need. "Deliberate indifference . . . can be established by either a subjective or objective standard. . . ." Id. at 87 (citation omitted). "Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Id. at 87 (emphasis in original).

Here, Zarbo's body camera recording of the exchanges between the plaintiff and Zarbo suggests that Zarbo appeared to not believe the plaintiff's statement that his leg was broken, and these exchanges lasted for approximately 25 seconds. Then, after Zarbo asked the plaintiff to tell him where he thought his leg was broken and the plaintiff asked for a doctor, Zarbo promptly responded affirmatively and asked the plaintiff to give him additional information concerning the plaintiff's injury. Zarbo then asked the plaintiff whether he wanted to go to the hospital, and within seconds of the plaintiff indicating he

-47-

might need to go to the hospital and within two minutes of the
plaintiff first complaining of a broken leg, Zarbo requested
that the police dispatcher send emergency medical services to
the scene to treat the plaintiff.

 The plaintiff does not base this claim on the time that
elapsed between Zarbo taking him to the ground and Zarbo
requesting that emergency medical services be sent to the scene.
Rather, he claims that Zarbo "was deliberately indifferent to
the Plaintiff's serious medical condition, in that he failed to
report the mechanism of the injury to the treating physicians."
Compl. ¶ 45. The plaintiff claims that "[a]s a result of the
Defendants['s] deliberate indifference, the Plaintiff was
delayed in getting proper medical treatment." Id. ¶ 47. He
argues in his opposition that he "was transported to a hospital,
where Zarbo continued to mislead medical personnel that Wolak
was not injured" and that "Zarbo's intentional misreporting of
how badly he had injured Wolak directly led to a delay in
obtaining proper diagnosis and treatment, which exacerbated his
injuries." Pl. Opposition at 19. He argues "[t]he factual issue
whether Zarbo recklessly or intentionally misreported the
mechanism of Wolak's injury to the EMS and hospital medical
personnel precludes summary judgment . . . ." Id. at 18. He
asserts that "[a] jury could easily credit Wolak's testimony and
find that Zarbo intentionally failed to report how he injured

-48-

Wolak." Id. at 19. It is undisputed that once medical personnel
arrived on the scene "the plaintiff was taken directly to the
Middlesex Shoreline Medical Clinic via ambulance." PSF ¶ 38.
"The medical professionals at the hospital performed x-rays and,
upon reading the same, discharged the plaintiff with a diagnosis
of arthritis and sent him home." PSF ¶ 39. It is also undisputed
that medical personnel at the facility did not diagnose the
plaintiff with a broken acetabulum because they misread the x-
ray.

The plaintiff offers no evidence, other than his own
testimony, in support of his contention that Zarbo's failure to
report to the treating physicians how the plaintiff was injured
resulted in a delay in the plaintiff getting medical treatment.
While he cites to the report of Dr. Brianna R. Fram, MD, which
attributes his injury "to the incident on November 18th[,] 2022,
when [the plaintiff] reports he was tackled by police with
immediate pain and deformity of his right leg", the report does
not mention any statement made by Zarbo at the Middlesex Health
Emergency Room. Pl. Ex. 6 (ECF No. 61-8) at 2, 6. The report
states that the plaintiff's "clinical course was complicated by
missed diagnosis when he initially presented to the emergency
room," but does not identify any particular cause for the missed
diagnosis. Id. at 6. Nor does the plaintiff's testimony support
this contention. During his deposition, the plaintiff was asked,

"At the time that you were in the hospital, did you tell them what happened, your version of events?" Zarbo Ex. D (ECF No. 51-7) (Pl. Dep. Transcript) at p.67 l.4 –l.6. The plaintiff's response was, "I don't recall what I said to them at that moment in time." Id. at p.67 l.7 – l.8. He was then asked:

> Q    But it's your testimony that you believe Zarbo somehow
>      had an effect on the treatment you received at the
>      hospital?
>
> A    I believe a hundred percent he had to have done that,
>      only based on what I heard him say to the ambulance.
>
> Q    Okay. But you didn't [hear him say] anything to the
>      hospital?
>
> A    Look, I was -- I was in so much pain. If you're asking
>      me with a hundred percent certainty, no, I can't tell
>      you with a hundred percent certainty.

Id. at p.67 l.9 – l.20.

Thus, the plaintiff proffers no evidence as to any interaction that Zarbo had with the physicians at the hospital that could have influenced how the physicians treated the plaintiff, nor any evidence as to the reason(s) medical personnel misread the x-ray and did not diagnose the broken acetabulum. He simply believes, without any factual basis for doing so, that Zarbo had an effect on the treatment he received at the hospital.

Thus, assuming arguendo that the plaintiff could bring this claim against Zarbo based on actions taken after the plaintiff was under the care of medical professionals, the plaintiff has

-50-

failed to create a genuine issue as to whether Zarbo acted with deliberate indifference to his serious medical needs.

Therefore, defendant Zarbo's motion for summary judgment is being granted with respect to the Ninth Count.

### F. Negligence (Eighth and Tenth Counts)

The Eighth Count is a claim for negligence against Zarbo and Simpson. The plaintiff claims:

> The defendants exhibited a lack of reasonable care, in one or more of the following ways:
>
> a. By failing to reasonably investigate the circumstances before and/or while arresting, apprehending or subduing the plaintiff;
>
> b. In escalating a non-violent incident into one involving a high level of force.
>
> c. By applying unreasonable force to arrest the Plaintiff.

Compl. ¶ 41. The Tenth Count is a claim for negligence against Zarbo only. The plaintiff claims that "Officer Zarbo exhibited a lack of reasonable care in that he failed to report the mechanism of the injury to the treating physicians." Id. ¶ 49.

"In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury." LaFlamme v. Dallessio, 261 Conn. 247, 251 (2002). "Negligence is the violation of a legal duty which one person owes to another." Connecticut Civil Jury Instructions § 3.6-1.

-51-

"Common-law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances." Id. § 3.6-3.

Simpson argues that he is entitled to summary judgment on the negligence claim against him because there is no evidence that his "actions lacked such reasonable care as to constitute negligence" and also because "there is no evidence that any of Simpson's actions were the proximate cause of any injury to the plaintiff." Town and Simpson Memorandum at 37-38. In his opposition, the plaintiff does not address his negligence claim against Simpson.

Thus, the plaintiff does not contest Simpson's statements that he and Zarbo "did not know what the plaintiff was possibly doing", that "Wolak could have been a possible danger", and that Simpson and Zarbo "were unaware of his intentions at the time." Town and Simpson's L.R. 56(a)(1) Statement of Facts in Support of Mot. for Summ. J. (ECF No. 52-2) ("Town and Simpson SF") ¶ 19. The plaintiff does not dispute that "there is no constitutional right to an adequate investigation . . . by police officials." Salaman v. City of New Haven, No. 3:19-CV-577 (MPS), 2019 WL 2231223, at *5 (D. Conn. May 23, 2019) (citations omitted). Nor does he respond to Simpson's argument that notwithstanding the fact that there is no constitutional right

-52-

to an adequate police investigation, "it cannot be said that
Simpson failed to reasonably investigate the circumstances such
that his actions rose to the level of negligence." Town and
Simpson Memorandum at 37. The plaintiff does not dispute that
"there is no evidence that Simpson's actions in grabbing the
plaintiff's wrists to assist in his detention . . . constituted
an escalation of the interaction." Id.

Based on the foregoing, Simpson has met his initial burden
at the summary judgment stage, and the plaintiff has failed to
create a genuine issue of material fact with respect to the
negligence claim.

Zarbo argues that the plaintiff does not have a viable
negligence claim because "the negligence claims set forth in the
complaint are derivative of the substantive false arrest,
excessive force, and failure to intervene claims . . . ." Zarbo
Memorandum at 28. Because the court has concluded there are
genuine issues of material fact with respect to the plaintiff's
excessive force and assault and battery claims against Zarbo,
this argument fails with respect to the negligence claim against
Zarbo, to the extent it is based on those claims.

Both Zarbo and Simpson argue that the plaintiff's common
law claims are barred by governmental immunity; the court does
not reach this argument with respect to Simpson, because, as
discussed above, Simpson is entitled to summary judgment on the

-53-

negligence claim against him because the plaintiff has failed to create a genuine issue of material fact as to whether Simpson's actions lacked reasonable care and whether his actions were the proximate cause of injury to the plaintiff.

"[A]s a general rule, [p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer." Cole v. City of New Haven, 337 Conn. 326, 339 (2020) (citations and internal quotation marks omitted). Conn. Gen. Stat. § 52-557n(a)(2)(B) "extends . . . the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment . . . ." Id. at 337-38 (citations and internal quotation marks omitted). "There are three exceptions to discretionary act immunity." Violano v. Fernandez, 280 Conn. 310, 319-20 (2006). The three exceptions are as follows:

> First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure . . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.

Id. at 319-20 (internal quotation marks and citations omitted). The plaintiff claims that the identifiable person-imminent harm

-54-

exception is applicable here. "This identifiable person-imminent harm exception has three requirements: '(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm.'" Edgerton v. Clinton, 311 Conn. 217, 230-31 (2014) (quoting Doe v. Petersen, 279 Conn. 607, 620 (2006)).

Zarbo contends that the plaintiff has not produced evidence that could show that any of these three requirements is satisfied. The plaintiff argues, however, that "[c]ourts in this district routinely apply the imminent harm exception in the context of a case in which excessive force is alleged", and that viewing the evidence in the light most favorable to the plaintiff, the identifiable person-imminent harm exception applies. Pl. Opposition at 21.

The court recently certified to the Connecticut Supreme Court two questions with respect to the scope of the imminent harm-identifiable person exception to discretionary act immunity. See Quezada v. Hamel, No. 3:22-cv-77 (AWT), 2024 WL 5146521, at *5 (D. Conn. Dec. 17, 2024). The ruling of the Connecticut Supreme Court could be dispositive of the arguments the parties are making, and at this stage of the litigation it is appropriate to defer ruling on whether, and to what extent, the identifiable person-imminent harm exception applies in this case.

-55-

Therefore, Simpson's motion for summary judgment is being granted with respect to the Eighth Count, and Zarbo's motion for summary judgment is being denied without prejudice with respect to the Eighth and Tenth Counts.

## G. <u>Conn. Gen. Stat. § 52-557n (Eleventh and Twelfth Counts)</u>

The Eleventh Count is a claim against the Town pursuant to Conn. Gen. Stat. § 52-557n for indemnification based on the negligence claim in the Eighth Count. The Twelfth Count is an additional claim against the Town pursuant to Conn. Gen. Stat. § 52-557n for indemnification based on "negligent acts of Defendant Officers". Compl. ¶ 56. Because the court has denied without prejudice defendant Zarbo's motion for summary judgment with respect to the negligence claims, the Town's motion for summary judgment is also being denied without prejudice with respect to the Eleventh and Twelfth Counts.

## H. <u>Conn. Gen. Stat. § 7-465 (Thirteenth Count)</u>

The Thirteenth Count is a claim against the Town pursuant to Conn. Gen. Stat. § 7-465. The plaintiff claims that the Town "is legally liable to pay on behalf of the [defendant police officers] all sums which [they are] obligated to pay by reason of the aforesaid causes of action imposed upon such employees by law for damages awarded for the violation of common law rights and infringement of the civil rights and physical damages to the person and/or property of Plaintiff as a result of the events

-56-

complained of herein." Compl. ¶ 57.

"Under § 7-465, the municipality's duty to indemnify attaches only when the employee is found to be liable and the employee's actions do not fall within the exception for wilful and wanton acts." Myers v. City of Hartford, 84 Conn. App. 395, 401 (2004). The Town argues that "to the extent that all claims against the individual officers fail, . . . so too does the indemnification claim." Town and Simpson Memorandum at 38.

Because claims against defendant Zarbo have survived summary judgment, the Town's motion for summary judgment is being denied with respect to this Count.

## I. Section 1983 Claim Against the Town (Fourteenth Count)

The Fourteenth Count is a Monell claim against the Town pursuant to 42 U.S.C. § 1983. The plaintiff claims that the "Town failed to adequately train and supervise the Defendant Officers in the seizure of its citizens." Compl. ¶ 58.

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978)).

"[M]unicipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality)).

Thus, "a municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004). "City of Canton requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Id. at 129 (quoting City of Canton, 489 U.S. at 391). "[T]he Supreme Court emphasized in City of Canton that plaintiffs must establish that 'the officer's shortcomings . . . resulted from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." Id. at 129-30 (quoting City of Canton, 489 U.S. at 390-91). "The

-58-

elements of an identified training deficiency and a close causal
relationship, which together require the plaintiffs to prove
that the deprivation occurred as the result of a municipal
policy rather than as a result of isolated misconduct by a
single actor, ensure that a failure to train theory does not
collapse into respondeat superior liability." Id. at 130.

Evidence produced by the Town with respect to training of
Department police officers includes the following:

14. Each Old Saybrook police officer is required to
successfully complete a municipal police officer
training academy program in accordance with the State of
Connecticut Police Officer Standards and Training
Council ("POST") or a state-accepted equivalent to the
municipal training academy.

15. Each officer is further required to complete state-
mandated re-certification training every three years to
continue as a municipal police officer. This training
consists of all aspects of law enforcement, including
but not limited to, training in constitutional
requirements, laws of arrest and search and seizure,
crime scene investigation, report writing, and
interviewing techniques, among other subject areas.

16. Additionally, Old Saybrook police officers receive
training on Old Saybrook Police Department policies and
procedures, including use of force.

17. Joshua Zarbo and James Simpson were duly sworn police
officers with the Town of Old Saybrook as of November
2022, and had successfully completed the municipal
police officer training academy program or a state-
accepted equivalent.

18. Old Saybrook police officers are required to complete
at least forty hours of training in job related subjects
every three (3) years in order to maintain their re-
certification as police officers.

-59-

19. As of November, 2022, Joshua Zarbo and James Simpson
were in full compliance with the re-certification
requirements in place at that time.

Town Ex. F (ECF No. 52-8) (Chief Michael A. Spera Aff.) ¶¶ 14-
19. The plaintiff does not dispute this evidence, which is set
forth in paragraphs 64 to 68 of the Town's 56(a)(1) statement.
Nor does the plaintiff address his failure to train claim in his
opposition, and nowhere in the record does the plaintiff
identify a specific deficiency in the Town's training program,
much less any evidence as to such a deficiency.

Based on the foregoing, the Town has met its initial burden
at the summary judgment stage, and the plaintiff has failed to
create a genuine issue of material fact with respect to the
failure to train claim. Thus, the Town is entitled to summary
judgment on the failure to train claim.

To prove a failure to supervise claim, a plaintiff must
"(1) establish [the] defendants' duty to act by proving they
should have known their inadequate supervision was so likely to
result in the alleged deprivations so as constitute deliberate
indifference under [Walker v. City of New York, 974 F.2d 293 (2d
Cir. 1992)]; (2) identify obvious and severe deficiencies in the
. . . defendants' supervision that reflect a purposeful rather
than negligent course of action; and (3) show a causal
relationship between the failure to supervise and the alleged
deprivations to plaintiffs." Reynolds v. Giuliani, 506 F.3d 183,

-60-

193 (2d Cir. 2007). "In this context, plaintiffs must establish
. . . deliberate indifference [by a policymaking official] by
showing that 'the need for more or better supervision to protect
against constitutional violations was obvious,' but that [the
policymaking official] made 'no meaningful attempt' to forestall
or prevent the unconstitutional conduct." Amnesty Am., 361 F.3d
at 127 (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d
Cir. 1995)). "Thus, [a plaintiff's] evidence must establish only
that a policymaking official had notice of a potentially serious
problem of unconstitutional conduct, such that the need for
corrective action or supervision was 'obvious,' and the
policymaker's failure to investigate or rectify the situation
evidences deliberate indifference, rather than mere negligence
or bureaucratic inaction." Id. at 128 (quoting Vann, 72 F.3d at
1049).

   In support of its motion for summary judgment the Town
submitted the affidavit of Michael A. Spera, who has been the
chief of police for the Department since 2009. Spera avers that
"[a]t no time in November 2022, nor at any time since I have
been Chief of the Old Saybrook Police Department, has the Old
Saybrook Police Department condoned any conduct by its officers
resulting in the deprivation of an individual's civil or
constitutional rights." Town Ex. F ¶ 5. Spera also avers that at
no time during his tenure as Chief has the Department "had any

custom, policy, or practice of biased, and/or inadequate
investigations with or investigations conducted in a way to
predetermine an outcome of not sustained or exonerated
disposition" or a "practice of failing to identify, neglecting
or ignoring patterns of possible misbehavior by its police
officers." Id. ¶¶ 7, 9. Spera avers further that at no time
since he began serving as Chief "has the Old Saybrook Police
Department condoned any conduct by its officers resulting in the
deprivation of an individual's civil or constitutional rights."
Id. ¶ 5.

    In his opposition, the plaintiff asserts that "[t]he Town
has a history of inadequate supervision over its police
Department." Pl. Opposition at 23. "During a four-year period
preceding this incident, there [were] reported incidents of Old
Saybrook Police officers escalating minor or non-existent
offenses into uses of force that resulted in hospitalizations of
the victims." Id. The only evidence the plaintiff proffers in
support of his assertions with respect to such incidents is
three newspaper articles, two from the New Haven Register and
one from the Middletown Press. "[N]ewspaper articles offered for
the truth of the matters asserted therein are inadmissible
hearsay that may not be considered by the Court in deciding a
motion for summary judgment." Odom, 772 F. Supp. 2d at 404. See
also Allen v. City of New York, 480 F.Supp.2d 689, 720 (S.D.N.Y.

2007) ("The Court, however, cannot consider [these newspaper] article[s] in assessing [the plaintiff's] opposition to summary judgment. Such evidence constitutes inadmissible hearsay, which is 'unusable to defeat summary judgment.'" (quoting Gonzalez v. City of New York, 354 F.Supp.2d 327, 347 n.29 (S.D.N.Y. 2005))).

The plaintiff does not contest evidence that neither Zarbo nor Simpson had ever had any prior citizen complaints or internal affairs investigations related to use of excessive force and that Simpson's interaction with the plaintiff was the first time he had to use force as an officer. See Town and Simpson SF ¶¶ 3, 9, 11. In addition, he does not dispute that Zarbo never had a use of force incident that resulted in a broken bone. See id. ¶ 2.

Based on the foregoing, the Town has met its initial burden at the summary judgment stage and the plaintiff has failed to create a genuine issue of material fact as to whether the Town had notice of a potentially serious problem of unconstitutional conduct, much less that the Town failed to investigate or rectify any such situation. Thus, the Town is entitled to summary judgment on the failure to supervise claim.

Therefore, the Town's motion for summary judgment is being granted with respect to the Fourteenth Count.

IV.  **CONCLUSION**

For the reasons set forth above, the defendants' motions

-63-

for summary judgment are being granted in part and denied in part, as set forth below.

As to defendant Zarbo, Defendant's Motion for Summary Judgment (ECF No. 51) is hereby GRANTED with respect to the First, Second, Fifth, Sixth, Seventh, and Ninth Counts; hereby DENIED without prejudice with respect to Eighth and Tenth Counts; and hereby DENIED with respect to the Third and Fourth Counts.

As to defendant Simpson, the Motion for Summary Judgment (ECF No. 52) is hereby GRANTED with respect to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Counts.

As to defendant Town of Old Saybrook, the Motion for Summary Judgment (ECF No. 52) is hereby GRANTED with respect to the Fourteenth Count; hereby DENIED without prejudice with respect to the Eleventh and Twelfth Counts; and hereby DENIED with respect to the Thirteenth Count.

Patrolman James Simpson is no longer a defendant in this case, as summary judgment has been granted in his favor with respect to all the claims against him.

The remaining claims in this case are the claims in the Third, Fourth, Eighth, and Tenth Counts against defendant Zarbo and the claims in the Eleventh, Twelfth, and Thirteenth Counts against defendant Town of Old Saybrook.

It is so ordered.

-64-

Case 3:23-cv-00734-AWT  Document 951  Filed 08/28/25  Page 65 of 65


Dated this 28th day of August 2025, at Hartford,

Connecticut.

                                    /s/ AWT
                            ─────────────────────────
                               Alvin W. Thompson
                            United States District Judge

APPEAL,EFILE,FOLDER,RAR,REFCNF,RMS

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:23-cv-00734-AWT

| | |
|---|---|
| Wolak v. Town of Old Saybrook et al | Date Filed: 06/06/2023 |
| Assigned to: Judge Alvin W. Thompson | Jury Demand: Defendant |
| Referred to: Judge Robert A. Richardson (Settlement) | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

## **Plaintiff**

**Scott Wolak**        represented by    **A. Paul Spinella**
Spinella & Associates, LLC
One Lewis Street
Hartford, CT 06103
860-728-4900
Fax: 860-728-4909
Email: ATTORNEYS@SPINELLA-
LAW.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## **Defendant**

**Town of Old Saybrook**       represented by    **Katherine E. Rule**
Howd & Ludorf, LLC
100 Great Meadow Road
Ste 201
Wethersfield, CT 06109
860-249-1361
Fax: 860-249-7665
Email: krule@hl-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristan M. Jakiela**
Howd & Ludorf, LLC
100 Great Meadow Road
Ste 201
Wethersfield, CT 06109
203-927-4422
Email: kjakiela@hl-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## **Defendant**

**Joshua Zarbo**       represented by    **Andrew James Glass**
*Officer; in his individual capacity*      Karsten & Tallberg LLC
500 Enterprise Drive, Suite 4B

Rocky Hill, CT 06067
860-233-5600
Fax: 860-233-5800
Email: aglass@kt-lawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis M Durao**
Karsten & Tallberg LLC
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067
860-233-5600
Fax: 860-233-5800
Email: ddurao@kt-lawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine E. Rule**
(See above for address)
*TERMINATED: 12/19/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristan M. Jakiela**
(See above for address)
*TERMINATED: 12/19/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Simpson**
*Patrolman; in his individual capacity*
*TERMINATED: 08/28/2025*

represented by **Katherine E. Rule**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristan M. Jakiela**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/06/2023 | 1 | COMPLAINT against All Defendants ( Filing fee $402 receipt number BCTDC-7371912.), filed by Scott Wolak.(Spinella, A.) (Entered: 06/06/2023) |
| 06/06/2023 | | Request for Clerk to issue summons as to Town of Old Saybrook. (Spinella, A.) (Entered: 06/06/2023) |
| 06/06/2023 | | Request for Clerk to issue summons as to Joshua Zarbo. (Spinella, A.) (Entered: 06/06/2023) |
| 06/06/2023 | | Request for Clerk to issue summons as to James Simpson. (Spinella, A.) (Entered: 06/06/2023) |

10/1/25, 2:12 PM                                          CT CMECF NextGen

| 06/06/2023 | 2 | Notice: Pursuant to Federal Rule of Civil Procedure 7.1, a disclosure statement must be filed with a party's first appearance, pleading, petition, motion, response, or other request addressed to the Court and must be supplemented if any required information changes during the case.<br>Signed by Clerk on 6/6/23.(Hushin, Z.) (Entered: 06/06/2023) |
|---|---|---|
| 06/06/2023 |  | Judge Alvin W. Thompson and Judge Robert M. Spector added. (Oliver, T.) (Entered: 06/06/2023) |
| 06/06/2023 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 8/5/2023. Discovery due by 12/6/2023. Dispositive Motions due by 1/10/2024.<br>Signed by Clerk on 6/6/2023. (Mendez, D) (Entered: 06/07/2023) |
| 06/06/2023 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER.<br>Signed by Judge Alvin W. Thompson on 6/6/2023. (Mendez, D) (Entered: 06/07/2023) |
| 06/06/2023 | 5 | STANDING PROTECTIVE ORDER.<br>Signed by Judge Alvin W. Thompson on 6/6/2023. (Mendez, D) (Entered: 06/07/2023) |
| 06/07/2023 | 6 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES: Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 4 Electronic Filing Order, 2 Notice re: Disclosure Statement, 1 Complaint filed by Scott Wolak, 3 Order on Pretrial Deadlines, 5 Protective Order.<br>Signed by Clerk on 6/7/2023.(Mendez, D) (Entered: 06/07/2023) |
| 06/07/2023 | 7 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Town of Old Saybrook* with answer to complaint due within *21* days. Attorney *A. Paul Spinella* *Spinella & Associates, LLC* *One Lewis Street* *Hartford, CT 06103*. (Mendez, D) (Entered: 06/07/2023) |
| 06/07/2023 | 8 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Joshua Zarbo* with answer to complaint due within *21* days. Attorney *A. Paul Spinella* *Spinella & Associates, LLC* *One Lewis Street* *Hartford, CT 06103*. (Mendez, D) (Entered: 06/07/2023) |
| 06/07/2023 | 9 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *James Simpson* with answer to complaint due within *21* days. Attorney *A. Paul Spinella* *Spinella & Associates, LLC* *One Lewis Street* *Hartford, CT 06103*. (Mendez, D) (Entered: 06/07/2023) |
| 06/21/2023 | 10 | NOTICE of Appearance by Katherine E. Rule on behalf of James Simpson, Town of Old Saybrook, Joshua Zarbo (Rule, Katherine) (Entered: 06/21/2023) |
| 06/21/2023 | 11 | CERTIFICATE OF SERVICE by Scott Wolak (Attachments: # 1 Return of Service-Simpson, # 2 Return of Service-Zarbo)(Spinella, A.) (Entered: 06/21/2023) |
| 06/21/2023 | 12 | NOTICE of Appearance by Kristan M. Jakiela on behalf of James Simpson, Town of Old Saybrook, Joshua Zarbo (Jakiela, Kristan) (Entered: 06/21/2023) |
| 07/06/2023 | 13 | Consent MOTION for Extension of Time until August 2, 2023 to file a responsive pleading 1 Complaint by James Simpson, Town of Old Saybrook, Joshua Zarbo. (Jakiela, Kristan) (Entered: 07/06/2023) |
| 07/27/2023 | 14 | NOTICE of Appearance by A. Paul Spinella on behalf of Scott Wolak (Spinella, A.) (Entered: 07/27/2023) |

| 07/31/2023 | 15 | ANSWER to 1 Complaint with Affirmative Defenses with Jury Demand by James Simpson, Town of Old Saybrook, Joshua Zarbo.(Jakiela, Kristan) (Entered: 07/31/2023) |
|---|---|---|
| 07/31/2023 | 16 | Consent MOTION for Extension of Time until September 18, 2023 (To Respond to Interrogatories and Production Requests Dated July 5, 2023) by James Simpson, Town of Old Saybrook, Joshua Zarbo. (Rule, Katherine) (Entered: 07/31/2023) |
| 08/04/2023 | 17 | ORDER: The defendants' Motion for Extension of Time (ECF No. 16 ) is hereby GRANTED. The defendants shall respond to the plaintiff's first set of interrogatories and requests for production dated July 5, 2023 on or before September 18, 2023. It is so ordered. Signed by Judge Alvin W. Thompson on 08/04/2023. (Frazier, T.) (Entered: 08/04/2023) |
| 08/04/2023 | 18 | ORDER: The Motion for Extension of Time (ECF No. 13 ) is hereby DENIED as moot. See ECF No. 15 . It is so ordered. Signed by Judge Alvin W. Thompson on 08/04/2023. (Frazier, T.) (Entered: 08/04/2023) |
| 08/07/2023 | 19 | REPORT of Rule 26(f) Planning Meeting. (Jakiela, Kristan) (Entered: 08/07/2023) |
| 08/25/2023 | 20 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Initial Planning Conference set for 9/1/2023 12:00 PM before Judge Alvin W. Thompson. Dial-in instructions have been emailed to counsel of record. Anyone wishing to observe this proceeding should contact chambers at 860-240-3224 to request the dial-in instructions. (Frazier, T.) (Entered: 08/25/2023) |
| 09/01/2023 | 21 | Minute Entry for proceedings held before Judge Alvin W. Thompson: Initial Planning Conference held on 9/1/2023. Total Time: 3 minutes. (Court Reporter Alicia Cayode Kyles.) (Frazier, T.) (Entered: 09/01/2023) |
| 09/01/2023 | 22 | ORDER: The Rule 26(f) Report of Parties' Planning Meeting (ECF No. 19 ) is hereby APPROVED. All discovery shall be completed by October 20, 2024. Dispositive motions are due by December 20, 2024. All other deadlines are approved as set forth in the report. Signed by Judge Alvin W. Thompson on 09/01/2023. (Frazier, T.) (Entered: 09/01/2023) |
| 09/01/2023 | 23 | ORDER RE JOINT STATUS REPORT. Signed by Judge Alvin W. Thompson on 09/01/2023. (Frazier, T.) (Entered: 09/01/2023) |
| 09/01/2023 | | Set Deadlines: Joint Status Report due by 4/24/2024. Discovery due by 10/20/2024. Dispositive Motions due by 12/20/2024. (Ferguson, L.) (Entered: 09/05/2023) |
| 09/13/2023 | 24 | Consent MOTION for Extension of Time until October 18, 2023 (To Respond to Interrogatories and Production Requests Dated July 5, 2023) 17 Order on Motion for Extension of Time, by James Simpson, Town of Old Saybrook, Joshua Zarbo. (Jakiela, Kristan) (Entered: 09/13/2023) |
| 09/15/2023 | 25 | ORDER: The defendants' Consent Motion for Extension of Time (ECF No. 24 ) is hereby GRANTED. The defendants' shall answer, object or otherwise respond to plaintiff's First Set of Interrogatories and Requests for Production on or before October 18, 2023. It is so ordered. Signed by Judge Alvin W. Thompson on 09/14/2023. (Vascotto, J.) (Entered: 09/15/2023) |
| 09/19/2023 | 26 | NOTICE of Appearance by Dennis M Durao on behalf of Joshua Zarbo (Durao, Dennis) (Entered: 09/19/2023) |
| 09/19/2023 | 27 | NOTICE of Appearance by Andrew James Glass on behalf of Joshua Zarbo (Glass, Andrew) (Entered: 09/19/2023) |

| 12/08/2023 | 28 | MOTION to Amend/Correct 15 Complaint by Joshua Zarbo.Responses due by 12/29/2023 (Attachments: # 1 Memorandum in Support, # 2 Redlined Amended Pleading, # 3 Clean Amended Pleading)(Durao, Dennis) (Entered: 12/08/2023) |
| --- | --- | --- |
| 12/11/2023 | 29 | ORDER: Defendant Joshua Zarbo's Request for Leave to Amend Answer and Affirmative Defenses to Plaintiff's Complaint (ECF No. 28 ) is hereby GRANTED, absent objection. Defendant Joshua Zarbo shall file his amended answer and affirmative defenses forthwith. It is so ordered. Signed by Judge Alvin W. Thompson on 12/11/2023. (Vascotto, J.) (Entered: 12/11/2023) |
| 12/11/2023 | 30 | AMENDED ANSWER to 1 Complaint with Affirmative Defenses with Jury Demand by Joshua Zarbo. (Durao, Dennis) (Entered: 12/11/2023) |
| 12/18/2023 | 31 | MOTION to Amend/Correct 15 Answer to Complaint by James Simpson, Town of Old Saybrook.Responses due by 1/8/2024 (Attachments: # 1 Memorandum in Support, # 2 Redlined Amended Pleading, # 3 Clean Amended Pleading)(Jakiela, Kristan) (Entered: 12/18/2023) |
| 12/19/2023 | 32 | ORDER: Defendants Town of Old Saybrook and Patrolman James Simpson's Request for Leave to Amend Answer and Affirmative Defenses (ECF No. 31 ) is hereby GRANTED. They shall file their amended answer and affirmative defenses forthwith. It is so ordered. Signed by Judge Alvin W. Thompson on 12/19/2023. (Vascotto, J.) (Entered: 12/19/2023) |
| 12/19/2023 | 33 | ORDER: The Clerk shall revise the docket to reflect that Attorney Katherine E. Rule and Attorney Kristan M. Jakiela no longer represent defendant Joshua Zarbo. It is so ordered. Signed by Judge Alvin W. Thompson on 12/19/2023. (Vascotto, J.) (Entered: 12/19/2023) |
| 12/19/2023 | 34 | *AMENDED* ANSWER to 1 Complaint with Affirmative Defenses with Jury Demand by James Simpson, Town of Old Saybrook.(Jakiela, Kristan) (Entered: 12/19/2023) |
| 01/25/2024 | 35 | MOTION for Security for Costs by Joshua Zarbo. (Durao, Dennis) (Entered: 01/25/2024) |
| 01/26/2024 | 36 | ORDER granting Motion for Security for Costs (ECF No. 35 ). The defendant(s) having made application to the Clerk of Court for an order requiring the plaintiff(s) to deposit or file a bond with sufficient surety in the sum of $500.00 pursuant to Local Rule 83.3(a) of the Rules of Civil Procedure for the United States District Court of Connecticut, it is ORDERED that the plaintiff(s) herein file a bond as security for costs in this action within thirty (30) days from this date. Signed by Clerk on 1/26/2024. (Ferguson, L.) (Entered: 01/26/2024) |
| 02/29/2024 | 37 | Security for Costs BOND in the amount of $ 500.00 posted by Scott Wolak; Receipt Number 21071 (Peterson, M) (Entered: 02/29/2024) |
| 04/24/2024 | 38 | Joint STATUS REPORT by James Simpson, Town of Old Saybrook. (Jakiela, Kristan) (Entered: 04/24/2024) |
| 05/02/2024 | 39 | ORDER: The Joint Status Report (ECF No. 38 ) is hereby APPROVED. It is so ordered. Signed by Judge Alvin W. Thompson on 5/01/2024. (Vascotto, J.) (Entered: 05/02/2024) |
| 07/15/2024 | 40 | MOTION to Quash *Subpoena-Corba* by Scott Wolak.Responses due by 8/5/2024 (Spinella, A.) (Entered: 07/15/2024) |
| 07/15/2024 | 41 | MOTION to Quash *Subpoena-Wiencek* by Scott Wolak.Responses due by 8/5/2024 (Spinella, A.) (Entered: 07/15/2024) |
| 07/16/2024 | 42 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Hearing on Motion to Quash Subpoena (ECF No. 40 ) and Motion to Quash Subpoena (ECF No. 41 ) set for 8/15/2024 at 01:00 PM in South |

| | | Courtroom, 450 Main St., Hartford, CT before Judge Alvin W. Thompson. (Vascotto, J.) (Entered: 07/16/2024) |
|---|---|---|
| 07/17/2024 | 43 | Consent MOTION for Extension of Time until August 21, 2024 (To Respond to Plaintiff's Second Set of Interrogatories and Production Requests Dated June 21, 2024) by Town of Old Saybrook. (Jakiela, Kristan) (Entered: 07/17/2024) |
| 07/18/2024 | 44 | ORDER: The Motion for Extension of Time (ECF No. 43 ) is hereby GRANTED. Defendant Town of Old Saybrook shall respond to plaintiff's Second Set of Interrogatories and Requests for Production on or before August 21, 2024. It is so ordered. Signed by Judge Alvin W. Thompson on 7/18/2024. (Vascotto, J.) (Entered: 07/18/2024) |
| 08/05/2024 | 45 | OBJECTION re 41 MOTION to Quash *Subpoena-Wiencek*, 40 MOTION to Quash *Subpoena-Corba* filed by Joshua Zarbo. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Durao, Dennis) (Entered: 08/05/2024) |
| 08/15/2024 | 46 | MOTION to Withdraw 41 MOTION to Quash *Subpoena-Wiencek*, 40 MOTION to Quash *Subpoena-Corba* by Scott Wolak. (Spinella, A.) (Entered: 08/15/2024) |
| 08/15/2024 | 47 | ORDER: The Motion to Withdraw Motion to Quash Subpoena (ECF No. 46 ) is hereby GRANTED. The docket shall reflect that Motion to Quash Subpoena (ECF No. 40 ) and Motion to Quash Subpoena (ECF No. 41 ) are no longer pending. It is so ordered. Signed by Judge Alvin W. Thompson on 8/15/2024. (Vascotto, J.) (Entered: 08/15/2024) |
| 12/13/2024 | 48 | MOTION for Leave to File Excess Pages by Town of Old Saybrook, James Simpson. (Jakiela, Kristan) (Entered: 12/13/2024) |
| 12/16/2024 | 49 | Memorandum in Opposition *to Motion for Permission* re 48 MOTION for Leave to File Excess Pages filed by Scott Wolak. (Spinella, A.) (Entered: 12/16/2024) |
| 12/16/2024 | 50 | ORDER: Defendants' Motion for Permission to File Brief in Excess of 40 Pages (ECF No. 48 ) is hereby GRANTED over objection, in light of the number of claims against the three defendants. The defendants' memorandum in support of their motion for summary judgment shall be no more than 50 pages. It is so ordered. Signed by Judge Alvin W. Thompson on 12/16/2024. (Bodurtha, M.) (Entered: 12/16/2024) |
| 12/20/2024 | 51 | MOTION for Summary Judgment by Joshua Zarbo.Responses due by 1/10/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit List, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Exhibit O, # 19 Exhibit P, # 20 Exhibit Q, # 21 Exhibit R, # 22 Exhibit S, # 23 Exhibit T)(Durao, Dennis) (Entered: 12/20/2024) |
| 12/20/2024 | 52 | MOTION for Summary Judgment by Town of Old Saybrook, James Simpson.Responses due by 1/10/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I-M, # 12 Exhibit N, # 13 Exhibit O, # 14 Exhibit P, # 15 Exhibit Q, # 16 Exhibit R, # 17 Exhibit S, # 18 Exhibit T)(Jakiela, Kristan) (Entered: 12/20/2024) |
| 12/23/2024 | 53 | MOTION for Extension of Time to File Response/Reply as to 52 MOTION for Summary Judgment , 51 MOTION for Summary Judgment until March 11, 2025 by Scott Wolak. (Spinella, A.) (Entered: 12/23/2024) |

| | | |
|---|---|---|
| 12/26/2024 | 54 | ORDER: Plaintiff's consented-to Motion for Extension of Time to Respond to Motion for Summary Judgment (ECF No. 53 ) is hereby GRANTED. The plaintiff shall respond to the defendants' motions for summary judgment on or before March 11, 2025. It is so ordered. Signed by Judge Alvin W. Thompson on 12/26/2024. (Bodurtha, M.) (Entered: 12/26/2024) |
| 12/26/2024 | | Set/Reset Deadlines as to 52 MOTION for Summary Judgment, 51 MOTION for Summary Judgment. Responses due by 3/11/2025. (Ferguson, L.) (Entered: 12/27/2024) |
| 02/28/2025 | 55 | Second MOTION for Extension of Time to File Response/Reply as to 52 MOTION for Summary Judgment , 51 MOTION for Summary Judgment until April 25, 2025 by Scott Wolak. (Spinella, A.) (Entered: 02/28/2025) |
| 03/03/2025 | 56 | ORDER: Plaintiff's consented-to Motion for Extension of Time to Oppose Summary Judgment (ECF No. 55 ) is hereby GRANTED. The plaintiff shall respond to the defendants' motions for summary judgment on or before April 25, 2025. It is so ordered. Signed by Judge Alvin W. Thompson on 3/3/2025. (Bodurtha, M.) (Entered: 03/03/2025) |
| 03/03/2025 | | Set/Reset Deadlines as to 52 MOTION for Summary Judgment, 51 MOTION for Summary Judgment. Responses due by 4/25/2025. (Ferguson, L.) (Entered: 03/04/2025) |
| 04/04/2025 | 57 | Joint MOTION for Settlement Conference *with a Magistrate Judge* by James Simpson, Town of Old Saybrook. (Rule, Katherine) (Entered: 04/04/2025) |
| 04/07/2025 | 58 | ORDER: The parties' Joint Motion for Referral of the Case to a Settlement Conference with a Magistrate Judge (ECF No. 57 ) is hereby GRANTED. The Clerk shall refer this case to a magistrate judge for a settlement conference. It is so ordered. Signed by Judge Alvin W. Thompson on 4/7/2025. (Bodurtha, M.) (Entered: 04/07/2025) |
| 04/14/2025 | 59 | ORDER REFERRING CASE to Magistrate Judge Robert A. Richardson for a Settlement Conference. It is so ordered. Signed by Judge Alvin W. Thompson on 4/14/2025. (Ferguson, L.) (Entered: 04/14/2025) |
| 04/15/2025 | 60 | ORDER: A pre-settlement conference call is set for 4/18/25 at 11:30 AM with Judge Richardson. Conference call instructions have been provided to counsel via email. Signed by Judge Robert A. Richardson on 4/15/2025. (Fries, J.) Modified on 4/15/2025 to edit the time (Blue, A.). (Entered: 04/15/2025) |
| 04/15/2025 | 61 | Memorandum in Opposition re 51 MOTION for Summary Judgment , 52 MOTION for Summary Judgment filed by Scott Wolak. (Attachments: # 1 Statement of Material Facts, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit)(Spinella, A.) (Entered: 04/15/2025) |
| 04/15/2025 | 62 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. A pre-settlement conference is set for 4/18/2025 at 11:30 AM before Judge Robert A. Richardson. (Fries, J.) (Entered: 04/15/2025) |
| 04/18/2025 | 63 | Minute Entry for proceedings held before Judge Robert A. Richardson: A pre-settlement conference call was held on 4/18/2025. Following the call, the Court does not believe a settlement conference would be productive at this time. If, after further discussion, the parties believe that a conference would be productive they can contact chambers to discuss scheduling. Total time: 10 minutes. (Fries, J.) (Entered: 04/18/2025) |
| 04/25/2025 | 64 | Consent MOTION for Extension of Time until June 20, 2025 *(ON BEHALF OF ALL DEFENDANTS)*, within which to file replies to objection to motions for summary judgment 61 Memorandum in Opposition to Motion, by James Simpson, Town of Old Saybrook, Joshua Zarbo. (Rule, Katherine) (Entered: 04/25/2025) |

| | | |
|---|---|---|
| 04/25/2025 | 65 | ORDER: Following further discussion, the parties believe that a settlement conference would be productive. Therefore, a settlement conference is scheduled for 10:30 AM on June 6, 2025 with Judge Richardson. Please refer to the attached order for important instructions. Signed by Judge Robert A. Richardson on 4/25/25. (Fries, J.) (Entered: 04/25/2025) |
| 04/25/2025 | 66 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. A Settlement Conference is set for 6/6/2025 at 10:30 AM in West Courtroom, 450 Main St., Hartford, CT before Judge Robert A. Richardson. (Fries, J.) (Entered: 04/25/2025) |
| 04/28/2025 | 67 | ORDER: Defendants' consented-to Joint Motion for Extension of Time (ECF No. 64 ) is hereby GRANTED. The defendants shall file a reply to the plaintiff's memorandum in opposition to the motion for summary judgment on or before 6/20/2025. It is so ordered. Signed by Judge Alvin W. Thompson on 4/28/2025. (Bodurtha, M.) (Entered: 04/28/2025) |
| 04/28/2025 | | Set/Reset Deadlines as to 52 MOTION for Summary Judgment, 51 MOTION for Summary Judgment. Responses due by 6/20/2025. (Ferguson, L.) (Entered: 04/29/2025) |
| 06/06/2025 | 68 | Minute Entry for proceedings held before Judge Robert A. Richardson: Settlement Conference held on 6/6/2025. Case not settled. Total Time: 2 hours and 30 minutes. (Fries, J.) (Entered: 06/06/2025) |
| 06/17/2025 | 69 | MOTION for Leave to File Excess Pages by James Simpson, Town of Old Saybrook. (Jakiela, Kristan) (Entered: 06/17/2025) |
| 06/18/2025 | 70 | ORDER: Defendants' Motion for Permission to File Reply Brief in Excess of 10 Pages (ECF No. 69 ) is hereby GRANTED. Defendants' reply memorandum shall not exceed 15 pages. It is so ordered. Signed by Judge Alvin W. Thompson on 6/18/2025. (Bodurtha, M.) (Entered: 06/18/2025) |
| 06/20/2025 | 71 | REPLY to Response to 51 MOTION for Summary Judgment filed by Joshua Zarbo. (Durao, Dennis) (Entered: 06/20/2025) |
| 06/20/2025 | 72 | REPLY to Response to 52 MOTION for Summary Judgment filed by James Simpson, Town of Old Saybrook. (Jakiela, Kristan) (Entered: 06/20/2025) |
| 07/14/2025 | 73 | MOTION for Leave to File *Sur-reply* by Scott Wolak. (Spinella, A.) (Entered: 07/14/2025) |
| 07/15/2025 | 74 | ORDER: Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 73 ) is hereby GRANTED. The plaintiff shall file a sur-reply forthwith. It is so ordered. Signed by Judge Alvin W. Thompson on 7/15/2025. (Bodurtha, M.) (Entered: 07/15/2025) |
| 08/28/2025 | 75 | ORDER: For the reasons set forth in the attached ruling, the defendants' motions for summary judgment (ECF Nos. 51 , 52 ) are hereby GRANTED in part and DENIED in part. James Simpson is no longer a defendant in this case, as summary judgment has been granted in his favor with respect to all the claims against him. It is so ordered. Signed by Judge Alvin W. Thompson on 8/28/2025. (Bodurtha, M.) (Entered: 08/28/2025) |
| 08/28/2025 | 76 | TRIAL MEMORANDUM ORDER: The parties shall jointly file by September 29, 2025, a Trial Memorandum for approval by the court as specified in the attached order. Signed by Judge Alvin W. Thompson on 8/28/2025.(Mata, E.) (Entered: 08/28/2025) |
| 08/28/2025 | | Set Deadlines: Joint Trial Memorandum due by 9/29/2025 (Ferguson, L.) (Entered: 08/29/2025) |
| 09/04/2025 | 77 | MOTION for Extension of Time until October 20, 2025 Trial Scheduling Order 76 Order, Set Deadlines/Hearings by Scott Wolak. (Spinella, A.) (Entered: 09/04/2025) |

| 09/05/2025 | 78 | ORDER: Plaintiff's consented-to Motion for Extension of Time re: Trial Scheduling Order (ECF No. 77 ) is hereby GRANTED. The parties shall file a joint trial memorandum on or before 10/20/2025. It is so ordered. Signed by Judge Alvin W. Thompson on 9/5/2025. (Bodurtha, M.) (Entered: 09/05/2025) |
|---|---|---|
| 09/05/2025 | | Set Deadlines: Joint Trial Memorandum due by 10/20/2025 (Ferguson, L.) (Entered: 09/08/2025) |
| 09/18/2025 | 79 | NOTICE OF INTERLOCUTORY APPEAL as to 75 Order on Motion for Summary Judgment,,, by Joshua Zarbo. Filing fee $ 605, receipt number ACTDC-8335470. (Attachments: # 1 Exhibit A - Ruling on Defendants' Motions for Summary Judgment) (Durao, Dennis) (Entered: 09/18/2025) |
| 09/19/2025 | 80 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic status conference set for 9/22/2025 at 4:00 PM before Judge Alvin W. Thompson via conference call. Dial-in instructions have been emailed to counsel of record. Anyone wishing to observe this proceeding should contact chambers at 860-240-3224 to request the dial-in instructions. (Bodurtha, M.) (Entered: 09/19/2025) |
| 09/19/2025 | 81 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 79 Notice of Interlocutory Appeal,. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: [52-11], [61-4], and [61-5] (Barry, L.) (Entered: 09/19/2025) |
| 09/19/2025 | 82 | NOTICE OF CANCELLATION: Re Telephonic Status Conference set for 9/22/2025 at 4:00 PM before Judge Alvin W. Thompson via conference call (ECF No. 80 ). The Telephonic Status Conference will not be going forward at this time. Signed by Judge Alvin W. Thompson on 9/19/2025. (Ferguson, L.) (Entered: 09/19/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/01/2025 14:12:28 | | |
| **PACER Login:** | dennisdurao85 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00734-AWT |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SCOTT WOLAK                          :          CASE NO. 25-2279
  Plaintiff,                          :
                   :
vs.                                  :
                   :
TOWN OF OLD SAYBROOK, ET AL.,        :          OCTOBER 1, 2025
  Defendants.

## ADDENDUM B TO FORM C

**I.**   **Issues Proposed To Be Raised On Appeal:**

The defendant-appellant Joshua Zarbo anticipates raising the following issues on appeal:

1.   Whether the District Court erred in concluding that the existence of factual disputes precluded the defendant from being afforded qualified immunity on the excessive force claims brought by the plaintiff-appellee.

2.   Whether the undisputed record evidence established that the force used by the defendant in interacting with the plaintiff-appellee was reasonable and/or did not violate clearly established law such that the defendant is entitled to qualified immunity on the excessive force claims.

**II.**   **Applicable Appellate Standard Of Review:**

Qualified immunity shields officials from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly established rights of which an objectively reasonable official would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Thomas v. Roach, 165 F. 3d 137, 142 (2d Cir. 1999); Ricciuti v. N.Y.C. Transit Authority, 124 F. 3d 123, 127 (2d Cir. 1997).  "Qualified immunity is

1

an entitlement not to stand trial or face the other burdens of litigation.  [It] is an immunity from suit rather than a mere defense to liability ...."  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-201 (2001) (citations omitted; internal quotation marks omitted).  The immunity would be "effectively lost if a case is erroneously permitted to go to trial."  <u>Id.</u>, at 201.  Therefore, the denial of qualified immunity on a question of law is subject to immediate appeal.  <u>See</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985); <u>X-Men Security, Inc. v. Pataki</u>, 196 F. 3d 56 (2d Cir. 1999).

"A district court's mere assertion that disputed factual issues exist[ed] [is not independently sufficient] to preclude an immediate appeal."  <u>Salim v. Proulx</u>, 93 F. 3d 86, 89 (2d Cir. 1996).  Even where a Court finds that material disputes of fact preclude summary judgment on qualified immunity, an interlocutory appeal is still appropriate where the defendant contests the existence of a dispute or materiality of such facts, or where the defendant claims an entitlement to qualified immunity even under the plaintiffs' version of the facts.  <u>See</u> <u>Cowan v. Breen</u>, 352 F. 3d 756, 761 (2d Cir. 2003); <u>Tierney v. Davidson</u>, 133 F. 3d 189. 194 (2d Cir. 1998); <u>O'Bert v. Vargo</u>, 331 F. 3d 29, 38 (2d Cir. 2003.  In the absence of a material factual dispute, the question of whether it was objectively reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make."  <u>Lennon v. Miller</u>, 66 F. 3d 416, 422 (2d Cir. 1995); <u>Muschette on Behalf of A.M. v. Gionfriddo</u>, 910 F. 3d 65, 71 (2d Cir. 2018).

The Court of Appeals reviews a District Court's granting or denial of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party.  <u>See</u> <u>Tenenbaum v. Williams</u>, 193 F. 3d 581, 593 (2d Cir. 1999), *cert. denied*, 529 U.S. 1098 (2000).

2

DEFENDANT-APPELLANT,
JOSHUA ZARBO

BY/ss/ Dennis M. Durao
    Dennis M. Durao
    Federal Bar No.: ct29271
    Andrew J. Glass
    Federal Bar No.: ct30054
    Karsten & Tallberg, LLC
    500 Enterprise Drive, Ste. 4B
    Rocky Hill, CT 06067
    T: (860)233-5600
    F: (860)233-5800
    ddurao@kt-lawfirm.com
    aglass@kt-lawfirm.com

## CERTIFICATION

I hereby certify that on October 1, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/ss/ Dennis M. Durao
Dennis M. Durao

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030